620     APPELLATE COURTS OF ILLINOIS.

Employers' etc., Corp. v. Kelly Const. Co., 195 Ill. App. 620.

## Employers' Liability Assurance Corporation, Limited, of London, England, Appellee, v. Kelly-Atkinson Construction Company, Appellant.

### Gen. No. 20,737.

1. ACCOUNT STATED, § 3*—*when statements of premiums by employers' liability insurance company not account stated.* In an action to recover premiums due under policies insuring defendant against loss due to liability for personal injuries sustained by employees while in the employ of defendant, which policies provided that the amount of the premium payable thereunder should be a percentage of the amounts paid by defendant for wages, to be computed from correct reports thereof to be furnished by defendant for the purpose of such computation, statements of the amounts of such premiums based on a report of defendant later found to be incorrect, *held* not to be an account stated, operating to bar the original rights of action accruing under the policies, although defendant paid the amount stated in such statements to be due, and plaintiff received such payment without objection to the correctness of defendant's reports, such acts being contemplated by the contract and essential to its complete execution, and not a basis for the adjustment of a controversy, for which reason such acts were not independent of the original causes of action so as to form a new contract, based on a new consideration and involving a promise to pay the amounts found to be due.

2. ACCOUNT STATED, § 3*—*when written contract not account stated.* The principle that an account stated of the amount due under a contract will bar the original cause of action accruing on such contract has no application to a' case of the statement of the amount due under a written contract, where there is no dispute as to the amount due and plaintiff has no means of verifying the amount due independently of information furnished by defendant.

3. ACCOUNT STATED, § 3*—*when no acquiescence in account so as to constitute stated account.* Where a plaintiff renders an account of the amounts due under a written contract on information furnished by defendant as to matters of which defendant has exclusive knowledge, plaintiff cannot be held to acquiesce in the correctness of such information by the mere fact that it failed to make objection thereto, where it had no means of verifying its correctness, and therefore had no grounds for such an objection.

4. ACCOUNT STATED, § 16*—*when account stated not conclusive.* The principle that an account stated of the amounts due under a

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same. topic and section number.

contract will bar the original right of action accruing under such contract does not apply to transactions involving fraud, concealment or misrepresentation.

5. ESTOPPEL, § 74*—*when employers' liability insurance company not estopped by laches from questioning accuracy of reports.* In an action to recover the amounts of premium due under policies insuring defendant against loss due to liability for bodily injuries sustained by employees while in defendant's employ, where the policy provided that the amount of such premium should be a percentage of the amounts paid by defendant for wages to be determined from correct reports of such amounts to be furnished by defendant, plaintiff *held* not estopped by laches from questioning the accuracy of such reports by the fact that for five years it continued to accept payments based on such reports without objection to the accuracy thereof, although such want of objection may have resulted in a change in defendant's position, in that it meantime lost its books, and although plaintiff had the right to compel a view and examination of defendant's books, and failed to assert such right, for the reason that plaintiff was not required to assume or suspect fraud where the business relation between the parties was such as to invite confidence in such reports.

6. WITNESSES, § 196*—*when witness may use memoranda to refresh memory.* It is proper to permit a witness to read from a memorandum book or other writing items entered therein by the witness at the time of the transactions testified to, although after inspecting the writing witness may have no independent recollection of the facts therein recorded, provided witness can state that the memoranda were made at the time of such transactions or within such subsequent time that he had a perfect recollection thereof, and that at the time of making such memoranda he knew the matters recorded to be true, or now knows that he would not have made such memoranda unless he had then so known, and also provided that the writing be produced with an opportunity for cross-examination as to it, so that the jury may also draw their conclusions as to the facts recorded.

7. WITNESSES, § 198*—*when truth of facts in memoranda question for jury.* Where a witness is permitted to read from a memorandum book in which he has recorded the facts testified to, the question whether the facts are correctly set forth therein, as testified to, is one of fact for the jury.

8. WITNESSES, § 195*—*when memoranda of proper character to be used by witness to refresh memory.* In an action to recover premiums due under policies insuring defendant against loss by reason of liability for bodily injuries sustained by employees while

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

622 APPELLATE COURTS OF ILLINOIS.

Employers' etc., Corp. v. Kelly Const. Co., 195 Ill. App. 620.

in defendant's employ, where the policy provided that the amount of the premium should be a percentage of the amounts paid by defendant for wages to be computed from correct reports of such amounts to be furnished by defendant, *held* not error to permit a witness to read from a memorandum book the amounts of certain pay rolls, notice to produce the originals having been given and not complied with, and there being evidence that the amounts therein recorded were copied from original sources, and so numerous as to render independent memory thereof practically impossible, as such evidence was competent, regardless of whether the amounts were copied from pay rolls or journals, as being the next best evidence and the best and only evidence obtainable of items copied from defendant's documents or books, by which defendant would have been bound if it had produced them.

9. EVIDENCE, § 366*—*when question not objectionable as calling for conclusion.* Questions to a witness are not objectionable as embodying conclusions where such questions are mere references to evidence to which it is desired to draw the attention of the witness.

10. INSTRUCTIONS, § 96*—*when refusal of instruction on credibility of witnesses not error.* Where a witness was permitted to read from a memorandum book entries made at the time of the transactions testified to and where a general instruction as to the credibility of witnesses was given, *held* not error to refuse an instruction that the credibility of what witness was permitted to read from his memorandum book depended on the testimony and credibility of the witness himself, for the reason that the instruction refused singled out the testimony of a particular witness for the application of the test of credibility.

11. INSTRUCTIONS, § 96*—*when cautionary instruction as to credibility of witness improper.* The principle that a cautionary instruction as to the credibility of the testimony of an accomplice is proper has no application to the case of a witness who is permitted to read from a memorandum book entries made at the time of the transactions testified to.

12. INSURANCE, § 158a*—*when evidence of number of men employed and pay rolls inadmissible in action by employers' indemnity insurance company for premiums.* In an action to recover the amounts due for premiums under policies insuring defendant against liability for bodily injuries sustained by employees while in its employ, where each policy provided that the amount of such premium should be a percentage of the amounts paid by defendant for wages to be computed from correct reports of such amounts furnished by defendant, evidence of the average number of men employed by

*See **Illinois Notes Digest**, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

defendant during the period for which premiums were sought to be recovered and its pay rolls for such time *held* properly excluded, the real question for the jury being the actual amount of such pay rolls shown in some cases by the original pay rolls and in others by what purported to be correct copies of their totals, so that where defendant relied on the accuracy of its reports, the evidence rejected was incompetent as being uncertain and indefinite, and in not legitimately tending to show the accuracy of such reports or to refute the testimony of plaintiff that such reports were inaccurate.

13. INSURANCE, § 158b*—*when exclusion of evidence whether foreman made pay roll not prejudicial.* In an action to recover the amounts due for premiums under policies insuring defendant against liability for bodily injuries sustained by employees while in its employ, where each policy provided that the amount of such premium should be a percentage of the amounts paid by defendant for wages, to be computed from correct reports of such amounts to be furnished by defendant, but not including wages paid to employees of defendant's subcontractors, and where one of plaintiff's witnesses was testifying to memoranda copied from original pay rolls of defendant, in which memoranda witness had noted the fact that a certain pay roll was sent in by a foreman who in certain cases had been a subcontractor of defendant, the exclusion of a question to such witness asking whether a pay roll so indorsed was that of the foreman in question, *held* not prejudicial where it appeared affirmatively that pay rolls of subcontractors did not come into defendant's office, and also that the pay roll in question was one on which defendant recognized its obligation to pay a premium under the policy sued on.

14. INSTRUCTIONS, § 151*—*when requested instruction properly refused.* A requested instruction is properly refused where it is already covered in the charge.

15. INSURANCE, § 158b*—*when refusal of instruction as to burden of proof not reversible error.* In an action to recover amounts due as premiums under employer's indemnity insurance policies which provided that the premiums should be based upon the wages paid, as deduced from reports furnished by insured, except wages paid employees of subcontractors and employees in certain territory, *held* that the refusal of an instruction that plaintiff had the burden of proving that each item of wages was not that of a subcontractor nor for work performed in excepted territory was not reversible error.

16. CHAMPERTY AND MAINTENANCE, § 2*—*when insurance policy not void as providing for maintenance.* Policies insuring defendant

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

against loss due to liability for bodily injuries sustained by employees while in defendant's employ, which provide that insurer shall have the right at its own cost to defend and settle actions for damages against insured, and forbidding, except at its own cost, the settlement of such actions without the consent of insurer, are not void as amounting to maintenance, as the liability of insurer under the policy gave insurer an interest in the litigation which prevented the doctrine of maintenance from applying thereto, the rigor of the common law in applying the doctrines of champerty and maintenance having been relaxed as to modern forms of business.

17. INTEREST, § 80*—*when instruction as to recovery of statutory interest on liability insurance premiums not erroneous.* In an action to recover the amounts due as premium under policies insuring defendant against loss due to liability for bodily injuries sustained by employees while in defendant's employ, an instruction that plaintiff could recover statutory interest on amounts found to be due from the time such amounts became due under the terms of the policies, *held* not erroneous for the reason that each policy was "an instrument in writing" within the meaning of Hurd's Rev. St., ch. 74, sec. 2 (J. & A. ¶ 6691), providing for the recovery of interest at five per cent. on moneys due under "any bond, bill, promissory note or other instrument in writing."

18. INTEREST, § 17*—*when interest recoverable on liability insurance premiums.* The right accruing under Hurd's Rev. St., ch. 74, sec. 2 (J. & A. ¶ 6691), to recover interest on amounts found to be due under policies of liability insurance, requiring the payment by defendant of a premium in the amount of a certain percentage of the amounts paid by defendant for wages, which statute provides for the recovery of interest at five per cent. on moneys due under "any bond, bill, promissory note or other instrument in writing," is not affected by the fact that a controversy as to the correct amounts due as premiums under such policies arose subsequently to the accrual of plaintiff's right to such premiums, as such premiums became due as each policy expired, and the amounts were easily calculable at such time, and stood finally liquidated and ascertained as of that date.

Appeal from the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed December 21, 1915. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** This is an action brought by appellee, a casualty company, against appellant, a

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

corporation engaged in construction work, to recover additional or excess premiums under twenty-five of appellee's policies, indemnifying appellant against loss for damages from common law or statutory liability for bodily injuries to its employees and others. The amended declaration contains twenty-five counts, a count for the claim under each policy, and the common counts. Defendant pleaded the general issue and statute of limitations, and appellee replied. The total amount claimed with interest exceeded $30,000. Verdict and judgment were in favor of plaintiff for $15,000.

The policies covered a period extending from June 1900 to June 1904, and expired at different intervals by their terms or cancellation. The last was adjusted in March 1904. Each policy contains this provision:

"C. The premium is based on the compensation to employees to be expended by the assured during the period of this policy. If the compensation actually paid exceeds the sum stated in the schedule hereinafter given, the assured shall pay the additional premium earned; if less than the sum stated, the corporation will return to assured the unearned premium *pro rata.*"

This last clause was subject to a provision for a minimum premium which does not appear to figure in this case. The schedule referred to, which is part of the contract, states the premium rate for each $100 of compensation or wages paid to said employees and also the estimated amount of said wages for the period of the policy.

Each policy also provides:

"E. The corporation shall have the right and opportunity at all reasonable times to examine the books of the assured so far as they relate to the compensation paid to his employees. * * * The assured shall, if requested, furnish the corporation with a written statement of the amount of such compensation during any part of the policy period under oath if required."

The premium paid at the time of taking out the policy was computed by applying said rate to said estimated amount, and on its expiration defendant made a report of what purported to be the actual amount, and thereupon plaintiff rendered a bill for the additional or excess premium earned, or refunded a proportionate part of that already paid, according to whether the actual wages exceeded or were less than the estimated wages.

Each special count alleges that the amount of the actual compensation or wages paid by defendant to its employees mentioned in the policy declared on, exceeded the estimated amount and that defendant's statement or report of the actual amount was false and fraudulent.

Plaintiff's agent sometimes compared such reports with a private memorandum of pay rolls kept by defendant's secretary, but at no time did he examine or obtain access to defendant's original pay rolls or books, and not until near the close of 1903 did plaintiff make any request of defendant to produce them, when it was informed by defendant's secretary (who furnished the reports) that they were lost or destroyed. Plaintiff's agent testified that on certain occasions before their loss or destruction was reported, he sought to verify defendant's report, but on one pretext or another defendant urged the inconvenience of examining its original books and papers at those times. While there was some loose reference to a "final account" and the closing of all transactions between the parties on plaintiff's books, the evidence does not indicate that there was anything in the nature of a general accounting or of striking a balance of accounts.

On failure of defendant on notice or under process of court to produce any of its original books, pay rolls, etc., plaintiff offered in evidence some of defendant's original pay rolls and time books, obtained from defendant's storehouse through a writ of replevin.

The wages, as shown by them, greatly exceeded the amounts as reported by defendant. . To show the amount of pay rolls not produced or found, secondary evidence was resorted to.   Plaintiff called Sierts, defendant's bookkeeper for the periods in question, who testified that for personal convenience he kept a private memorandum book into which he entered the correct amounts of all the pay rolls. He testified that some of the pay rolls were sent in by the foreman of the particular job and some were made up by him from the foreman's time books sent into the office; that it was a part of his duty to enter and he did correctly enter the total of each pay roll into the journal and ledger; that, except during about the first six months the policies were in force, he correctly entered the amounts of the several pay rolls in said private memorandum book at or about the same time he entered them in the journal and ledger, and the amounts of the pay rolls for said six months he correctly copied into his private book from the journal after comparing it with the pay rolls kept on file.   In view of his inability to remember their respective amounts, he was permitted to read them to the jury.

ZANE, MORSE & McKINNEY, for appellant; JOHN M. ZANE and CLARENCE E. ELDRIDGE, of counsel.

WINSTON, PAYNE, STRAWN & SHAW, for appellee.

MR. JUSTICE BARNES delivered the opinion of the court.

1.   Appellant contends that the transactions by which the amounts due upon the several policies were ascertained made them accounts stated, and as a conclusion therefrom that the original accounts were merged therein upon which no action would lie, plaintiff's remedy being an equitable action upon the stated accounts to surcharge or falsify, for fraud or mistake, an action of which the Municipal Court of Chicago has

628    APPELLATE COURTS OF ILLINOIS.

Employers' etc., Corp. v. Kelly Const. Co., 195 Ill. App. 620.

no jurisdiction. As we cannot assent to the premise we need not discuss the conclusion.

The basis of the contention that the transactions constituted stated accounts is that plaintiff made no objection to the "settlements" and no claim that defendant's reports were incorrect. The use of the term "settlement" is somewhat confusing. There was nothing in the transaction to justify its use in the sense that there was either an accord and satisfaction or a stated account. There was no dispute or controversy between the parties as to the amount of the pay rolls or the amount of premiums. Defendant alone knew the former and the latter was a matter of mere calculation when the former was known. There might be some basis for the contention had there been a controversy or dispute between the parties as to the amount due on the policies and plaintiff had accepted defendant's reports as the basis of an adjustment thereof, but these were not the facts. Reduced to its simplest form, the transaction with regard to each policy was simply this: that defendant, pursuant to its obligations so to do under the policy, reported the amount of its wages so that the premium could be computed and billed according to the rate specified in the policy. It was not something done independently of the contract forming a new consideration and a new and distinct promise to pay the amount found due, but the acts done were contemplated by the contract and essential to its complete execution, and therefore did not, as contended, have the effect to change it into one of an account stated so as to preclude recovery on the original cause of action.

Appellant finds analogy to an account stated in the claim that plaintiff acquiesced in the correctness of defendant's reports because it made no objection thereto and rendered its bill thereon, but we think there can be no application of the rule of a stated account to this state of facts, particularly (1) because

the bill rendered was for an amount due according to a written instrument for the payment of money over which there was no dispute, and (2) because plaintiff had no independent means of verifying the information on which it was based.

In *Middleditch v. Ellis*, 28 Exch. (Eng.) 623, an action was brought upon an account stated where the parties to a mortgage had met and agreed upon a balance due thereon. The court said:

"The defendant is charged with nothing but the money secured by the deed; there is no consideration for the suggested new liability, except the ascertaining how much remains due on the deed. It is a perversion of language to speak of this as an account stated; it is merely a process adopted for the purpose of ascertaining how much of the original debt has been discharged; and all which is really done is to make out to what extent the defendant remains liable upon the deed. This does not entitle the plaintiff to proceed as on a new liability arising as if from an account stated."

In *Young v. Hill*, 67 N. Y. 162, it was said:

"When a sum of money is secured by a deed and the balance is struck for the purpose of ascertaining how much remains due thereon, and the obligor admits the correctness of the amount and promises to pay it, an action will not lie on this account and promise, but the action must be brought on the security."

In *Valley Lumber Co. v. Smith*, 71 Wis. 308, it was held that the principle of law of a stated account has no application where the claim is the subject of a special contract.

While the written instrument in each of these cases was a specialty, yet the same principle was applied in *Jasper Trust Co. v. Lamkin*, 162 Ala. 388, 24 L. R. A. (N. S.) 1237, and in *Thomasma v. Carpenter*, 175 Mich. 428, 45 L. R. A. (N. S.) 543. In the former the parties to promissory notes had met and made a calculation as to the amount due thereon, and it was held that the mere calculation of the amount did not merge the notes

630    APPELLATE COURTS OF ILLINOIS.

Employers' etc., Corp. v. Kelly Const. Co., 195 Ill. App. 620.

into an account stated. In the latter case a statement of account for personal services under an express contract to pay a specified sum for a specified service was rendered without objection, and it was held not to come within the meaning of the rule applicable to an account stated. We think the principles of these cases are applicable to the facts at bar.

But there is another reason why the transaction cannot be deemed an account stated. There was no acquiescence by plaintiff in the correctness of defendant's reports on which the bills were rendered. The debtor had exclusive knowledge of the facts on which the bills were rendered and the creditor had no independent means of ascertaining their correctness nor grounds for objecting thereto.

In *Vanuxem v. New York Life Ins. Co.*, 122 Fed. 107, it was held that the general rule as to admission of items of an account from failure to object thereto was not applicable where the creditor had no means within his knowledge of verifying the amount and had only before him such items as the debtor chose to submit. Attention was also called in that case to the anomaly that exists here, of the debtor instead of the creditor invoking the rule, the court adopting the language of counsel to the effect that the admission of the correctness of an account rendered from failure to object thereto and the acquiescence in an account received from retention of it without objection must be the admission and acquiescence of the party charged or indebted.

To support its contention as to an account stated, appellant relies upon *State v. Illinois Cent. R. Co.*, 246 Ill. 188, but we think it is distinguishable from the case at bar in this essential fact, as well as others, that knowledge of the omitted items of account in that case was imputed to plaintiff.

Reaching the conclusion that there was no stated account, we need not discuss appellee's contention for

which there is ample authority, that the doctrine of an account stated does not apply where the transaction involves fraud, concealment or misrepresentation. Nor need we discuss any of appellant's other contentions based on the doctrine of a stated account.

Appellant also urges that as plaintiff had the right to demand a view and examination of defendant's books and to compel an examination if refused, and has waited over five years before attempting to assert its rights, it was not only guilty of laches but had induced defendant to alter its position and was thereby estopped from claiming that the reports made and accounts as settled were incorrect.  The only change in defendant's position suggested is the destruction or loss of its books, which can hardly be ascribed to anything plaintiff did.  However, when this case was here on appeal before (182 Ill. App. 372), we said that the evidence disclosed nothing until just before the suit that led appellee to question the accuracy of such reports or to put it on inquiry, and that it would be a strange doctrine to hold that plaintiff was guilty of lack of diligence because it did not assume or suspect fraud where the nature of the business relation was such as to invite its confidence in defendant's reports.

2.  It is contended that it was error under the circumstances above stated to permit the witness Sierts to read from his private memorandum book the amounts of the pay rolls not produced, which he had entered therein as aforesaid.  Under very similar circumstances a witness was permitted to read from a book entries showing dates and amounts of the delivery of coal in *O. S. Richardson Fueling Co. v. Seymour,* 235 Ill. 319.  The principle upon which such testimony is admissible is stated in *Diamond Glue Co. v. Wietzychowski,* 227 Ill. 338-347.  It is there said:

"Another condition under which a writing may be used is where a witness, after inspecting a writing, still has no independent recollection of the facts stated

therein, but is able to state that he correctly reduced them to writing at the time of the occurrence or within such a time afterward that he had a perfect recollection of them. If the witness knows that the facts were recorded at the time or when they were fresh in his memory, and that the memorandum would not have been made unless he knew the facts therein stated to be true when it was made, he will be permitted to make use of it, provided the writing is produced with an opportunity for cross-examination as to it, so that the jury may also draw their conclusion as to the fact."

These several conditions are presented in the instant case. If the items were correctly set forth, as testified to,—a question of fact for the jury,—they constituted the next best evidence, if not the only existing evidence, of the amounts of such pay rolls; and in view of the testimony that these items were correctly copied from such original sources and were so numerous and for such sums as to render independent memory of them practically impossible, we think they were admissible, regardless of when they were copied or whether they were copied from the pay rolls or journal. In either event, they constituted the next best obtainable evidence of items copied from defendant's documents or books by which it would have been bound had they been produced.

Objections were made to certain questions put to Sierts on the ground that they embodied certain conclusions. We shall not repeat the questions, but what are termed conclusions seem mere references to matters in evidence to which it was sought to direct the witness' attention.

It is also urged that it was error to refuse to give the jury a cautionary instruction to the effect that what the witness Sierts read from his memorandum book depended for its credibility upon the testimony and credibility of the witness himself. We think the instruction was properly refused. A general instruc-

Employers' etc., Corp. v. Kelly Const. Co., 195 Ill. App. 620.

tion relating to the credibility of witnesses was given and the court was justified in refusing an instruction of that character which, in effect, singled out the testimony of a particular witness for applying the test of credibility. A cautionary instruction may be given as to the testimony of an accomplice, but the principle justifying it had no application in this instance.

3. Appellant complains of the exclusion of an offer to show what was the average number of its men and its pay rolls for the years in question. The ruling was proper. The real question for the jury was the actual amount of the pay rolls shown in some instances by the original pay rolls and in others by what purported to be correct copies of their totals. Defendant relied upon the accuracy of its reports, and the rejected proof was not only uncertain and indefinite in character but did not legitimately tend to establish the correctness of defendant's reports or to refute the testimony relied on by plaintiff, nor did it appear that the witnesses had sufficient personal knowledge of the pay rolls to testify to their amounts with any degree of accuracy.

The policies did not cover wages paid to the employees of subcontractors. On some pay rolls in evidence, the witness Sierts had written the name of the foreman who sent them in, and because it had appeared that such foreman had on certain occasions been a subcontractor under defendant, its counsel asked the witness Sierts if the pay roll so indorsed was the foreman's. The court sustained objection thereto. No harm was done, for it affirmatively appeared that the pay rolls of subcontractors did not come into plaintiff's office and that the pay roll in question was one of those on which defendant recognized its obligation to pay a premium.

4. As the policies covered wages of plaintiff's employees only and not those of subcontractors, and some policies excepted work done in certain territory, de-

fendant requested instructions to the effect that plaintiff was required to show that each item of wages was not of wages paid by a subcontractor nor for work performed in excepted territory, but was for the particular work covered by the policies. We think the request was sufficiently covered by an instruction that it was necessary for plaintiff to show that the pay roll was one that arose under a particular policy and from the job described in the policy; but, if it was error to refuse the instructions in the form requested, it was not reversible error as the particular pay rolls plaintiff sought to prove related only to jobs defendant had reported and on which it had charged itself with the premiums. Another point urged against the refusal to give such instructions was that some pay rolls apparently included wages of employees for time taken in traveling to the jobs, which might more appropriately have been raised on a motion to exclude such evidence. If there was denial of such a motion it is not argued. But these items were relatively small and the verdict is for a much less sum than that which the jury were warranted in finding on the proof submitted.

5. When this case was here before, we decided adversely to appellant's contention that clauses in the policies, giving the insurer the right to defend and settle at its own costs actions for damages against the assured and forbidding settlement thereof by the assured without the insurer's consent except at its own cost, rendered the policies illegal on account of maintenance. The law of the case as stated on the former appeal is deemed binding on us. (*Hoxsey v. St. Louis & S. Ry. Co.*, 184 Ill. App. 410.) On this point we then adopted the reasoning in *Breeden v. Frankford Marine Accident & Plate Glass Ins. Co.*, 220 Mo. 327, 119 S. W. 576, that liability under the policies gave the insurer an interest in the litigation affecting the liability that removed such clauses from the doctrine

of maintenance. It was then and is still our opinion that the views expressed in the case cited are in harmony with prevailing opinion, which discloses a manifest relaxation of the rigor of the common law in applying the doctrine of champerty and maintenance to modern forms of business.

6. It is urged that it was error to instruct the jury that plaintiff would be entitled to statutory interest on amounts found to be due from the time they became due under the terms of the policy. The instruction was proper, as the facts bring the case within section 2, ch. 74, Hurd's Rev. St. Each policy was "an instrument in writing" on which money became due. The money or premium became due on each policy when it expired. Defendant recognized that fact by then charging itself therewith on its books. The fact that a controversy subsequently arose as to the correct amounts of the premiums does not affect the right to interest thereon, inasmuch as plaintiff's contracts were performed and accepted and the amount due on each policy was easily calculable at the time it expired and stands finally liquidated and ascertained as of that date. (*Bauer v. Hindley*, 222 Ill. 319; *Elgin, J. & E. Ry. Co. v. Northwestern Nat. Bank of Chicago*, 165 Ill. App. 35, and cases cited therein.)

Finding no reversible error, we affirm the judgment.

*Affirmed.*