# American Mutual Liability Insurance Company v. Lombardi et al.

*Leo Lichtenstein* and *Ernest L. Green, Jr.,* for plaintiff.

*John Martin Doyle* and *Holl, Taylor & Holl,* for defendants.

SWENEY, J., February 13, 1953.—This matter is before the court en banc upon preliminary objections to the complaint raising the question of venue and thereby questioning the jurisdiction of this court to hear and determine this matter. Testimony was taken before Sweney, J., on this question and this testimony has been transcribed and is part of the record.

Plaintiff contends that this suit is properly triable in Delaware County; that Rule 2130(*a*) of the Rules of Civil Procedure provides, inter alia, an action may be brought against a partnership in the county where a transaction or occurrence took place out of which the cause of action arose.

The facts briefly stated are: Plaintiff is a Massachusetts corporation authorized to do business in Penn-

sylvania. Since December 17, 1951, its principal office, in this State, has been at 67 Long Lane, Upper Darby, Delaware County; prior thereto, its principal office had been in Philadelphia County. Defendants are a partnership with its place of business in Philadelphia.

On or about January 1, 1949, plaintiff issued and delivered to defendants its manufacturers and contractors liability policy no. MC51601-C for a term of one year commencing January 1, 1949, and ending January 1, 1950. Thereafter, at defendants' request, plaintiff issued its endorsements nos. 5 to 15 to this policy. The endorsements were added in Philadelphia County. Defendants paid the initial deposit and additional premium computed upon payroll. Plaintiff is now suing for retrospective premiums, as provided for in the policy under heading of "Conditions", and sub-heading of "Premium."

Subsequent to January 1, 1950, upon the final audit by plaintiff of defendants' payroll for the entire term of the policy, it was determined that the standard earned premium on the aforesaid policy due and payable to plaintiff was $13,798. Defendants paid plaintiff this sum, partially by a dividend credit allowed on the standard premium in the sum of $2,760.15 and the balance in cash.

On or about January 1, 1950, at defendants' oral request, plaintiff issued to defendants its manufacturers' and contractors' liability policy no. MC55109 for a term of one year commencing January 1, 1950, and ending January 1, 1951. Thereafter, at defendants' oral request, plaintiff issued endorsements nos. 6 to 23 on the policy. These endorsements were added between January 1, 1950, and May 4, 1951, which was before plaintiff moved into Delaware County.

Subsequent to January 1, 1950, upon final audit by plaintiff of defendants' payroll for entire term of the policy, it was determined that the standard earned

premium due and payable to plaintiff was $35,513.32, which defendants paid partially by a dividend credit allowed on the standard premium in the sum of $5,327, and the balance in cash.

On or about May 23, 1952, the retrospective premium calculation on both the aforesaid policies was computed in accordance with the terms of the policies, and it was determined that the first retrospective adjusted premium on the policies was $83,207. Since the standard premium charges on these policies in the amount of $13,798.95 and $35,513.32 respectively or a total of $49,312.27 had been paid, there remained a balance of $33,894.73 for premiums due and payable to plaintiff, subject, however, to being reduced by a dividend credit on the additional premium developed on the first retrospective premium calculation in the sum of $3,972.80 leaving a present unpaid balance due by defendants to plaintiff in the sum of $27,921.93.

On or about December 1, 1950, plaintiff, at defendant's request issued its manufacturers' and contractors' liability policy no. MC66182-C for two years, commencing December 1, 1950, and ending December 1, 1952. Thereafter, at defendants' oral request, plaintiff added endorsements 1 to 5 to the policy. These endorsements were effective as of December 1, 1950, and were made and signed in Philadelphia. This policy was canceled as of August 17, 1952. On or about June 29, 1952, as a result of an interim audit of wage blanks by plaintiff of defendants' payroll for the period between December 1, 1950, and June 29, 1952, it was determined that the standard premium on the aforesaid policy was $4,753.48. Against this sum, credits have been given to defendants, totaling $3,242.68, so that there remains a balance of premium due and payable by defendants to the plaintiff, in the sum of $1,510.80.

Plaintiff depends upon its right to bring suit in Delaware County upon the following facts: (a) Horace Lombardi secured possession of certain endorsements at plaintiff's business office in Delaware County; (b) the endorsements were actually signed at said office; (c) plaintiff's representative called Horace Lombardi from plaintiff's Delaware County office; (d) Horace Lombardi sent correspondence to plaintiff at its Delaware County office; (e) Horace Lombardi received a bill from plaintiff's Delaware County office, and (f) additional premiums became due after plaintiff moved to Delaware County.

May any of these acts be considered as a transaction or occurrence "out of which the cause of action arose"? Our answer is "No."

This contract of insurance between the parties had its situs in Philadelphia. It was completed there. The offer and acceptance were made there. The mode of determining the premium was agreed to there. The risk attached there. All endorsements became effective there while plaintiff had its principal office there.

In Todd v. German-American Insurance Company of New York, 2 Ga. App. 789, 59 S. E. 94, the court held:

"A completed contract of insurance exists when the minds of the insurer and of the person to be insured meet upon the essential elements, to wit: the subject matter to which the policy should attach; the risk insured against; the duration of the risk; the amount of the indemnity; (and) the premium to be paid . . . All these essentials need not, however, be expressly negotiated upon, but may be understood from custom, course of dealing, or other circumstances from which assent to them may fairly be implied." (Syllabus)

The fact that the premium was not definitely fixed, until some later time, does not prevent the contract

from being complete. In State Mutual Fire Insurance v. Taylor, 157 S. W. 950, (Texas) the court said:

". . . and, while text writers usually say that the rate is an element of the contract which must be agreed upon, yet it is not to be understood by this, we apprehend, that where, as in this case, the proximate amount of the premium is known, and the exact amount is a mere matter of calculation, and the applicant for the insurance agrees to pay whatever amount the calculation shows it to be, that the contract cannot be enforced."

In Hayes v. O'Brien et al., 149 Ill. 403, 37 N. E. 73, it was held that where the contract appoints the mode of determining the price and the price is determined according to that mode, the contract becomes perfect and complete in all respects, as if it had originally been fixed in the writing. See Richards on the Law of Insurance (4th ed.) sec. 63.

It is a well-understood principle of liability insurance that, if the risk once attaches, the whole premium, as stated in the policy, has been earned by the insurer, unless the policy otherwise provides: Connecticut Fire Insurance v. Davison Chemical Corporation, 54 F. Supp. 2. Roger W. Copley, in his Briefs on the Law of Insurance (2nd ed.), vol. 2, at page 1367, says:

"In the absence of any stipulation fixing the time of commencement of the risk, it will be regarded as beginning with the completion of the contract."

In Pacific Coast Casualty Co. v. Home Telephone Co., 11 Cal. App. 712, 106 Pac. 262, the Court of Appeals 2nd District of California held: "An action on an indemnity insurance policy stipulating for the payment of additional premium, based on the payroll of insured for the policy term, . . . *is an action for a specific sum alleged to be due under a contract*, and is not a suit for an accounting, and whether any sum

is due depends on the amount which insured paid to employes in specified work during the term of the policy."

In the instant case, there is no provision in the policy that the whole premium was not earned when the risk attached. The issuance and delivery of the policy in Philadelphia County sets the forum for suit for the recovery of premiums due by the defendant partnership.

In discussing an insurance policy similar to the one in issue with respect to amount and ascertainment of premium, the Texas Court of Civil Appeals, in Fidelity and Casualty Company of New York v. J. W. Crowdus Drug Company, 166 S. W. 1186-87, said:

"The true and correct amount of the total wages paid its employes being thus truly arrived at, it then became, under the policy, a mere matter of mathematical calculation, and nothing more, to get the amount of the premium payable, for the rates were expressly fixed and agreed upon in the face of the policy. Where there is nothing left open for the parties to do but to ascertain the amount of the payroll, and then merely to mathematically compute, as here, the amount of the premium, the agreement of the parties should, in order to carry out its purpose and plain intent, be understood as meaning to pay what may be due from one party to the other." See also New Amsterdam Casualty Company v. W. B. Hetterstrom et al., 197 Ill. App. 452.

In Employers Liability Assurance Corp., Ltd., v. Kelly-Atkinson Construction Co., 195 Ill. App. 620, 628, the court, in speaking of insurance companies computing premiums at end of term, says:

"Reduced to its simplest form, the transaction with regard to each policy was simply this: that defendant, pursuant to its obligation so to do under the policy, reported the amount of its wages so that the premium

could be computed and billed according to the rate specified in the policy. It was not something done independently of the contract forming a new consideration and a new and distinct promise to pay the amount found due, but the acts done were contemplated by the contract and essential to its complete execution, and therefore did not, as contended, have the effect to change it into one of an account stated so as to preclude recovery on the *original cause of action.*"

It is clear, therefore, that plaintiff's action in assumpsit for the collection of premiums under policies issued in Philadelphia cannot be tried in Delaware County. The transactions upon which plaintiff rests its right to sue here are not such transactions or occurrences "out of which the cause of action arose." Defendant's preliminary objections must be sustained.

### Decree

And now, February 13, 1953, it is ordered and decreed that:

1. The preliminary objections herein filed by defendants raising the question of venue be, and they are hereby sustained;

2. The writ herein is set aside and the suit is dismissed, without prejudice to plaintiff.