THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* OLA NYLIN, Plaintiff in Error.

*Opinion filed October 26, 1908.*

1. INTOXICATING LIQUORS—*gas or foam is not to be measured in ascertaining quantity of liquor.* In ascertaining whether a person has sold intoxicating liquors in less quantity than five gallons in the original packages, the gas, froth or foam released when the package is opened is not to be included, as the statute contemplates the measurement of the liquor after it has been released from confinement and reached a quiet condition in the open air.

2. SAME—*knowledge that quantity of liquor sold was less than five gallons is unnecessary.* To authorize a conviction under the statute prohibiting the sale of intoxicating liquor outside the corporate limits of cities and villages in any less quantity than five gallons and in the original packages as put up by the manufacturers it is not necessary that the seller have knowledge that he is violating the law, and it is immaterial that he believed, in good faith, the representation of the manufacturer that the original packages contained five gallons.

3. SAME—*what constitutes a violation of the law.* The sale of a ticket calling for the number of bottles of beer in a case, even though the total is five gallons, constitutes a violation of the statute against selling in less quantity than five gallons, where the purchaser is given bottles of beer of different brands from time to time as he calls for them at the seller's place of business, until his ticket is used up.

4. SAME—*credence to be given the evidence is a matter for the jury.* Whether the cases of beer sold by the accused contained twenty-eight bottles or twenty-six bottles; whether a certain case of beer was set aside by the accused for each purchaser and no one given beer therefrom except the purchaser as he called for it from time to time, or whether the purchaser merely paid for a case of beer and was allowed to get bottles of different brands from time to time until his ticket was used up, are questions for the jury where the evidence is conflicting, and their verdict will not be set aside as unwarranted unless clearly contrary to the weight of the evidence.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the County Court of Mercer county; the Hon. R. C. RICE, Judge, presiding.

COOKE & WILSON, (ALEX. MCARTHUR, of counsel,) for plaintiff in error.

W. H. STEAD, Attorney General, and WILLIAM J. GRAHAM, State's Attorney, for the People.

Per CURIAM: ·Plaintiff in error was charged, by information filed in the county court of Mercer county, with unlawfully selling intoxicating liquor in less quantities than five gallons outside of any city, town or incorporated village. The information contained thirty-six counts, but the last three counts were *nolle pross'd* by the State's attorney before the trial was entered upon. The trial resulted in the jury finding plaintiff in error guilty under seven counts of the information. The court overruled a motion for a new trial, entered judgment on the verdict, and sentenced plaintiff in error to pay a fine of $75 under each of the seven counts and to pay the costs of the prosecution. That judgment has been affirmed by the Appellate Court and a writ of error sued out of this court to bring the record before us for review.

Plaintiff in error's place of business was but a short distance outside of the corporate limits of the city of Aledo. He claimed to be selling beer in not less than five gallon quantities, in original packages.

A number of errors not going to the merits of the case, such as the ruling of the court in permitting the information to be amended, denying the motion by plaintiff in error for a continuance, the ruling of the court in empaneling the jury, assigned by plaintiff in error, do not require a discussion by us in detail. We have examined the questions and are satisfied that no error was committed by the court in this respect, and we are satisfied with the reasoning and conclusion of the Appellate Court upon these questions.

The principal questions raised by plaintiff in error, and to which the greater portion of his brief and argument is directed, are, first, that the evidence is insufficient to estab-

lish his guilt of selling liquor in less quantities than five gallons; and second, if he did sell in less quantities than five gallons he did not do it knowingly, but in good faith believed he was not selling in quantities less than five gallons.

R. H. Foote testified that he bought four cases of beer of plaintiff in error in June and July, 1906; that he paid for three of them himself, and one of them was paid for by joint contributions from himself, John Y. Smith and Frank Glancy. The first three cases were of the brand called "Blue Ribbon," and the last one, purchased June 23, was "Red, White and Blue." The beer was what is known as lager beer. He testified the first three cases were taken from the plaintiff in error's place of business at the time they were purchased and deposited at a convenient place until the amount of beer they contained could be measured. Foote testified each of these cases contained twenty-six bottles. He testified he did not take the last case purchased away from defendant's place of business, but by permission of plaintiff in error's clerks and servants took two bottles and left the remainder to be afterwards procured when desired by him. He was given a ticket upon which his name was written, and around the margin were numbers from 1 to 28. When he bought the case he paid for it, and upon taking the two bottles the number 2 was punched out of the ticket. The witness further testified he asked for Red, White and Blue beer, and plaintiff in error's clerk told him he could accommodate him, and the two bottles of beer given him were branded Red, White and Blue. A week later he procured two more bottles of Red, White and Blue and his ticket was again punched. He testified to getting four bottles of beer on his ticket a few days later, branded "Export." The ticket was offered in evidence and has the numbers 2, 5 and 8 punched out. The witness testified that punching the number 5 out was a mistake; that it should have been 4, and that when he procured the last four bottles mentioned he called the attention of plaintiff in error's clerk

to the mistake, and he then punched the number 8 instead of 9, as would have been correct if the witness had previously been furnished five bottles. Plaintiff in error offered evidence contradictory of this testimony.

Frank Glancy testified that he, Foote and Smith jointly purchased a case of beer and stored it away to be afterwards measured, and that he individually bought a case of Blue Ribbon beer June 30 and paid for it but did not take it away; that he was given a ticket on which his name was written, with numbers on it; that he took two bottles at the time he paid for the case and the clerk of plaintiff in error punched the number 2 out of his ticket; that a few days later he went back and asked for two more bottles; that he was given two bottles of "Export" and the number 4 was punched out of his ticket. He produced the ticket, which was introduced in evidence by the People.

John Y. Smith testified to being with Foote and Glancy when they jointly purchased the case of beer and took it away to be afterwards measured, and also that on June 9 he bought a case of Blue Ribbon beer himself and took it to the place of business of L. C. Detwiler to be measured.

C. M. Wells testified that he purchased a case of beer of plaintiff in error in May, 1906, and paid five dollars for it but did not take the case away; that he got a ticket for it, which was punched for the number of bottles of beer he took at the time he made the purchase, and that he afterwards procured all the beer his ticket called for. He was unable to tell how many times he was furnished beer and his ticket punched, but said that it was as much as five or six times.

Albert Nissen testified to buying seven or eight cases of beer during the summer of 1906. It is not clear from his testimony whether he was given tickets for all his purchases, but he was for at least a portion of them.

Melvin Nelson testified he bought a ticket good for a case of beer and was given about half of it at the time

he made the purchase and the ticket was given him, and that afterwards, and on the same day, he got the remainder of it.

Foote, Smith and Glancy testified that there were twenty-six bottles of beer in each of the cases delivered to them and deposited for subsequent measurement. C. N. Brock, who was with Smith when he bought the case, testified there were twenty-six bottles in it. These cases were afterwards measured, from three to four witnesses assisting in the measurement of each case. They testified there were twenty-six bottles in each case. Twenty-five of them were measured, in the presence of the witnesses, in gallon measures that had been tested, stamped and sealed by the Secretary of State as four quart measures. The whole twenty-six bottles in one case were measured at one time. In the other cases one of the bottles was marked for identification and was produced at and measured during the trial but not in the presence of the jury. According to the testimony of the witnesses who made the measurements these cases of twenty-six bottles each contained substantially four and one-half gallons of beer. In making these measurements the witnesses testified they consumed considerable time, so as to allow foam that rose on the beer when poured into the measure, to settle, so that the measure was full of liquid. Plaintiff in error contends that these measurements were unreliable, for the reason that the beer was charged with gas, which it is claimed is a component part of the beer, and that when the gas was released from the bottle it disappeared, so that a part of the contents of the bottle was not and could not be measured by the witnesses by the method they adopted. We think the Appellate Court correctly disposed of this contention in the following language: "Gas is an æriform fluid, but it is not a liquor within the meaning of that term as used in the statute concerning intoxicating liquor. It would be nullifying the restriction which provides liquor shall not be sold in less

quantities than five gallons without a license, to hold that the gas, froth or foam must be measured that may arise when the liquor is released from the pressure caused by gas in the vessel in which it is contained, whether that pressure be from fermentation or the method of bottling. We hold the measurement intended by the statute to be a measurement of the quiet liquor after it has been released from confinement and reached a quiet condition in the open air."

On the trial plaintiff in error sought to prove that he bought the beer under representations from the brewers who sold it to him that five bottles of it made a gallon. He offered to introduce in evidence bills of the brewery on which was printed, "Quarts, five to the gallon," and further offered to prove that he in good faith believed that five bottles contained a gallon of beer, and that he did not knowingly sell anyone beer in less quantities than five gallons, but, on the contrary, that each case of beer contained more bottles than was represented to him by the brewery to be necessary to contain five gallons of beer. The court refused to admit all this line of proof except as to the number of bottles he sold in each case, and instructed the jury that it was not necessary for the People to prove plaintiff in error knew the cases contained less than five gallons, and that intent or good faith on his part in making the sales was not to be considered as a defense.

The statute under which the information was filed prohibits the sale of intoxicating liquors outside of the corporate limits of cities and villages in any less quantity than five gallons and in the original packages as put up by the manufacturer. There is no qualification that to constitute a violation of this statute the party charged must have knowingly sold less than five gallons. Section 6 of the Dram-shop act prohibits selling or giving intoxicating liquors to a minor without the written order of his parent, guardian or family physician, or to any person intoxicated or who is in the habit of getting intoxicated. In that stat-

ute the element of knowledge that a person to whom intoxicating liquor is sold belongs to one of the prohibited classes is omitted. In *McCutcheon* v. *People,* 69 Ill. 601, the indictment charged the defendant with selling intoxicating liquors to a minor. In the trial court a motion was made to quash the indictment because there was no averment that defendant knew the party he was charged with selling to was a minor, and it was also insisted that, whether the averment of knowledge was necessary in the indictment or not, proof that the defendant knew the party he was charged with selling intoxicating liquors to was a minor was necessary in order to constitute a violation of the statute. This court held the indictment good, and upon the question of the necessity of proof of knowledge said, on page 606: "The license procured under the first section of the act confers no authority on the licensee to sell intoxicating liquors to a minor except upon one condition, viz., he shall have the written order of his parents, guardian or family physician. He is absolutely prohibited, by the same section, from selling to a person intoxicated or who is in the habit of getting intoxicated, and his license will afford him no protection. The law imposes upon the licensed seller the duty to see that the party to whom he sells is authorized to buy, and if he makes a sale without this knowledge he does it at his peril. This is the clear meaning of the law, and any other construction would render it exceedingly difficult, if at all possible, ever to procure a conviction for a violation of this clause of the statute. This construction imposes no hardship upon the licensed seller. If he does not know the party who seeks to buy intoxicating liquors at his counter is legally competent to do so he must refuse to make the sale. It is made unlawful, either with or without a license, to sell to a certain class of persons and to another class except under certain conditions, and if he violates either clause of the statute he must suffer the penalties imposed for its violation. It is no answer to this view

to say the licensee may sometimes be imposed upon and made to suffer the penalties of the law when he had no intention to violate its provisions. This is a risk incident to the business he has undertaken to conduct, and as he receives the gains connected therewith he must assume also with it all the hazards. Our laws make it a crime for a man to have carnal intercourse with a female under a certain age, either with or without her consent. It would shock our sense of justice to hold a party not guilty because he did not know she was within that age prescribed by the statute and therefore incapable of giving consent. The law makes the act a crime and infers the guilty intent from the act itself." This case was followed and adhered to in *Farmer* v. *People,* 77 Ill. 322.

The case of *Humpeler* v. *People,* 92 Ill. 400, was an indictment charging the defendant with selling and giving intoxicating liquors to a person who was in the habit of getting intoxicated. On the trial the court refused to permit defendant to prove that he did not know the party he was charged with furnishing the intoxicating liquors to was in the habit of getting intoxicated, and that ruling of the court was assigned as error in this court. Upon that question this court said (p. 402) : "That fact, if proven, would constitute no defense to the charge in the indictment. The statute makes a sale to a person in the habit of getting intoxicated a crime, and that, too, without regard to the question whether the vendor had knowledge of the habits of the person to whom the sale was made or not." The same rule is announced in *Mapes* v. *People,* 69 Ill. 523.

The principles announced in these cases are applicable to the case at bar. Indeed, the peril of selling to a minor or person in the habit of becoming intoxicated would seem much greater than that of selling in less quantities than five gallons, for in the former case the obstacles in the way of ascertaining whether a person was a minor or in the habit of becoming intoxicated might be very great, while in the

latter case it is within the power of the seller to ascertain the quantity of intoxicating liquors he is selling. The act prohibited by the statute under consideration is a statutory offense. The offense is selling intoxicating liquors in less quantities than five gallons. In discussing the subject of when ignorance or mistake of fact is a defense in criminal cases, Greenleaf (vol. 3, sec. 21,) says: "This rule would seem to hold good in all cases where the act, if done knowingly, would be *malum in se*. But where a statute commands that an act be done or omitted which, in the absence of such statute, might have been done or omitted without culpability, ignorance of the fact or state of things contemplated by the statute, it seems, will not excuse its violation. Thus, for example, where the law enacts the forfeiture of a ship having smuggled goods on board, and such goods are secreted on board by some of the crew, the owner and officers being alike innocently ignorant of the fact, yet the forfeiture is incurred notwithstanding their ignorance. Such is also the case in regard to many other fiscal, police and other laws and regulations, for the mere violation of which, irrespective of the motives or knowledge of the party, certain penalties are enacted, for the law in these cases seems to bind the party to know the facts and obey the law at his peril."

*Commonwealth* v. *Weiss*, 139 Pa. St. 247, (23 Am. St. Rep. 182,) was an action to recover a penalty for the sale of oleomargarine for butter. While it is not clearly stated in the opinion of the court that the defendant was a dealer, and not a manufacturer, of the product sold, as we understand the opinion such was the case. The defendant at the trial asked the court to instruct the jury if they believed, from the evidence, that he did not knowingly furnish or authorize to be furnished or have knowledge that any of his customers were being furnished with oleomargarine, but so far as he knew they were furnished butter, the verdict should be in his favor. This instruction was refused,

and the ruling of the court in refusing it is the principal question discussed in the opinion of the court. The court cited and quoted the section ·from Greenleaf above cited, and in an able opinion, in which a large number of authorities are referred to, held that the legality or illegality of the sale did not depend upon the ignorance or knowledge of the party charged. The cases referred to in that opinion will be found instructive and applicable to this case. Authorities might be multiplied in support of this view, as the weight of authority in other States supports it. The construction given to similar statutes in most jurisdictions is, that where the statute does not make knowledge of the seller an element of the offense, his lack of knowledge or good faith is not a defense. There are authorities in some States to the contrary, but they are in the minority and are contrary to the previous decisions of this court. To adopt any other rule would be in a large measure to defeat the object and purposes of the statute. In our opinion the court did not err in refusing to admit the evidence.

The plaintiff in error introduced evidence that he sold twenty-eight bottles of beer to the case, while a larger number of witnesses testified for the prosecution that there were only twenty-six bottles in the cases bought by them. Which was correct was a question for the jury. *Eastman* v. *People,* 93 Ill. 112.

Complaint is made of ·the vessels used by the witnesses in measuring the beer and of their introduction in evidence by the People. The proof shows the county clerk sent these measures by a special messenger to the Secretary of State to have them tested and stamped by him. Section 9 of chapter 147, Hurd's Statutes of 1905, makes the Secretary of State custodian of the authorized public standards of measures, and provides that he shall prove by such standards all measures that may belong to any county and be brought to him for that purpose by the county sealer. When found accurate he is required to stamp them with the

letter "I," with a seal provided for that purpose. Whether
these measures belonged to the county or not, and whether
the Secretary of State was required to test them, is imma-
terial. They were taken to him by a messenger of the
county clerk and the Secretary did test and stamp them as
correct, and in the absence of proof to the contrary this
is sufficient evidence that they were correct measures.

The prosecution claimed on the trial that receiving pay
for a case of beer by plaintiff in error and leaving the case
at his place, issuing to the purchaser a ticket with numbers
on it, for the purpose of enabling the purchaser to procure
as many bottles of beer at a time as he desired and have
the ticket punched for the number of bottles received, was
a sale in less quantities than five gallons even if the case
contained that amount, and that the method of issuing tick-
ets and delivering part at a time on presentation of the
tickets was a shift or device for the purpose of evading the
law. Several witnesses testified, for the prosecution, to the
procuring of beer in this manner. They testified they never
saw the case after paying for it and did not know where
the bottles came from they procured on tickets. Some of
them testified to buying one brand and receiving two dif-
ferent brands of beer on the ticket issued therefor. Two
employees of plaintiff in error testified that when the wit-
nesses for the prosecution bought cases and received tickets
instead of taking the case of beer away, they separated the
case from the stock, marked it, and allowed no one to have
beer out of it except the man holding the ticket for it. The
court, by proper instructions, submitted to the jury for its
determination, under the evidence, whether this was a shift
or device to evade the law. As we have before said, the
credibility of the witnesses was the province of the jury
to determine. If they gave credit to the testimony of the
witnesses for the prosecution they were justified in finding
that sales made in this manner were a violation of the law.
We cannot say that they were not justified in giving credit

to the witnesses for the prosecution. In criminal as well as civil cases great weight is to be given to the verdicts of juries upon controverted questions of fact, and they will not be disturbed by courts of appellate jurisdiction unless palpably contrary to the decided weight of the evidence. (*Steffy* v. *People*, 130 Ill. 98; *People* v. *Horchler*, 231 id. 566.) On the merits of the case we are unable to say that the proof offered on the part of the prosecution was insufficient to establish the plaintiff in error's guilt.

We shall not extend this opinion by a discussion of other errors assigned by plaintiff in error. We have examined them and find no prejudicial error in the record that would justify a reversal of the judgment.

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*