# The People of the State of Illinois, Defendant in Error, v. Charles B. Munday, Plaintiff in Error.

## Gen. No. 6,232.

1. CRIMINAL LAW, § 460*—*when court will not look beyond abstract.* A reviewing court will not look beyond the abstract in a criminal case to find something upon which to reverse a judgment, but may examine the record for matters to sustain a judgment.

2. CRIMINAL LAW, § 498*—*what abstract presumed to contain.* Parties bringing the record of a criminal case to the Appellate Court for review are presumed to present in their abstract that part of it deemed by them necessary to support their contentions.

3. GRAND JURY, § 15*—*how objections as to being illegal body may be raised.* An objection that the grand jury returning an indictment was an illegal body not drawn or summoned in accordance with the statute can only be raised by challenge to the array or by motion to quash the indictment.

4. INDICTMENT AND INFORMATION, § 58*—*when motion to quash indictment properly denied.* A motion to quash an indictment made after plea and without withdrawing or asking to withdraw the plea, *held* properly denied.

5. INDICTMENT AND INFORMATION, § 50*—*what misdemeanors and offenses may be joined in indictment.* Distinct misdemeanors or offenses of the same kind may be joined in one indictment in separate counts.

6. INDICTMENT AND INFORMATION, § 45*—*when denial of petition for bill of particulars is proper.* A petition for a further bill of particulars in a criminal case, *held* properly denied where it did not appear definitely what information was furnished and what

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The People v. Munday, 204 Ill. App. 24.

desired information was withheld in a bill of particulars already on file.

7. CRIMINAL LAW, § 545*—*when refusal to grant petition for bill of particulars is not reversible error.* The refusal to grant a petition for a bill of particulars in a criminal case does not constitute reversible error where no harm results to the defendant from the refusal.

8. JURY, § 78*—*when requiring defendant to complete panel after disqualification of jurors upon examination by defendant not error.* Where the prosecution in a criminal case tendered to the defendant a panel of four jurors, some of whom were disqualified on examination by the defendant, *held* that there was no error in a requirement by the court that the defendant complete the panel by the examination of other jurors that had not been tendered by the People.

9. JURY, § 47*—*when petition based on alleged improper conduct of bailiff in summoning jurors is properly denied.* A petition based upon hearsay and not proven, alleging that the bailiff summoning jurors in a case had not summoned any Democrats or Catholics and not charging that the jurors summoned were unfair or biased, *held* properly denied.

10. CRIMINAL LAW—*when failure to comply with law in procuring jury is harmless error.* Any informalities or failures to comply with the strict requirements of the law in procuring a jury, *held* not reversible error without any showing that the defendant was injured by reason thereof, in a criminal case wherein the defendant was found guilty.

11. CRIMINAL LAW, § 460*—*when objections as to irregularities and informalities in procuring jury are unavailable to defendant.* Objections as to informalities and irregularities in procuring a jury cannot avail a defendant convicted in a criminal case where he failed to abstract the examination of the jurors on their *voir dire.*

12. CRIMINAL LAW, § 245*—*how evidence should be considered.* Some matters may be determined from common knowledge presumed to be possessed by a jury and' the court in a criminal case, and all matters must be considered in the light of such knowledge and experience.

13. CONSPIRACY, § 50*—*when evidence sufficient to sustain verdict of guilty.* The evidence *held* to warrant a verdict of guilty, on trial under an indictment for conspiracy charging an unlawful combination under the banking laws.

14. CRIMINAL LAW, § 132*—*when secondary evidence of books and documents is admissible.* Where originals consist of numerous documents, books, papers or records which cannot conveniently be

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

examined in court, and the fact to be proved is the general result of an examination of the whole collection, evidence may be given in a criminal case as to such result by any competent person who has examined the documents, provided the result is capable of being ascertained by calculation.

15. TRIAL, § 91*—*when general objection to rulings on evidence is insufficient.* A general objection to the rulings of a trial court on evidence will not suffice where a special objection was necessary.

16. CRIMINAL LAW, § 589*—*when error in admitting improper evidence is cured.* Error in admitting improper evidence in a criminal case, *held* cured by its subsequent withdrawal by the court.

17. CRIMINAL LAW—*when books and writings admissible against defendant in a criminal case.* Books and writings of institutions with which a defendant in a criminal prosecution was connected, *held* admissible in evidence against him, notwithstanding they may have been taken from his possession unlawfully.

18. WITNESSES, § 194*—*when witness may use memoranda to refresh memory.* The use of written memoranda *held* proper in a criminal case for the purpose of refreshing the witness' recollection and in view of the immense amount of testimony and of the various facts otherwise proven and incidentally a part of the witness' testimony.

19. CONSPIRACY, § 50*—*when evidence sufficient to show worthlessness of securities at time taken by officer of bank.* The evidence *held* to show beyond doubt that certain securities taken by the defendant as an officer of a certain bank were worthless and inadequate when taken, in a prosecution for conspiracy charging an unlawful combination under the State banking laws.

20. CRIMINAL LAW, § 494*—*when accused may not complain of misconduct of State's Attorney.* An accused cannot complain of an error that he himself invited or provoked, as where, by improper answers to proper questions by and contemptuous remarks to the State's Attorney he provoked such attorney to some action technically wrong, if no prejudice to such accused resulted.

21. EVIDENCE, § 372*—*who may give opinions as to value of property.* All persons who are acquainted with property and have opinions of its value may give their opinions to the jury, together with their knowledge of the property and the facts upon which the opinions are based.

22. CONSPIRACY, § 47*—*what constitutes variance between indictment and proof in prosecution for conspiracy to defraud.* A charge in an indictment for conspiracy to defraud one party is not sustained by proof of conspiracy to defraud another party, but it

The People v. Munday, 204 Ill. App. 24.

is not necessary to prove a conspiracy to defraud all of the parties named in the indictment.

23. CRIMINAL LAW, § 274*—*when cautionary instruction is properly refused.* There is no error in refusing a cautionary instruction in a criminal case which is sufficiently covered by other instructions.

24. CRIMINAL LAW, § 110*—*what is presumed interest of defendant in prosecution.* The presumed interest of every defendant in a criminal prosecution is to avoid punishment.

25. CRIMINAL LAW, § 558*—*when use of word "evade" instead of "avoid" in instruction is harmless error.* The use of the word "evade" instead of the word "avoid" in an instruction in a criminal case on the right of the jury to take into consideration the defendant's interest in the trial in determining the weight to be given his testimony, and that in considering the weight to be given to his testimony they might take into consideration his interest in the case and his desire to "evade" punishment, *held* not reversible error.

26. CRIMINAL LAW, § 566*—*when instruction on credibility of witnesses not reversibly erroneous.* An instruction in a criminal case as to the elements to be considered by the jury in determining the credibility of witnesses, while of questionable propriety, *held* not to be substantially erroneous because it did not include all of such elements.

27. CRIMINAL LAW, § 289*—*when instruction invades province of jury.* The jury may be told in an instruction in a criminal case what they should or must do if there is no question about their duty, but where they have discretion it must not be limited by some imperative word.

28. CONSPIRACY, § 52*—*when instruction in criminal prosecution for is not erroneous.* Proof of a conspiracy proves a common enterprise, and an instruction in a criminal case that if a conspiracy is established the act or declaration of one conspirator done or made in the prosecution of the common enterprise may be considered against all co-conspirators is not erroneous as assuming there was an act or declaration to be considered or a common enterprise.

29. INDICTMENT AND INFORMATION, § 44*—*when instruction directing verdict if one of several counts in indictment is good is erroneous.* In a criminal case, an instruction is erroneous which directs a verdict if any count in the indictment is proven, where one of the counts is bad.

30. CRIMINAL LAW, § 236*—*when State may comment on failure of defendant to produce a witness.* The State may comment on the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

failure of the defendant to produce a witness in a criminal case where such witness was indicted jointly with the defendant but was not on trial, although such witness could not have been compelled to testify if he had claimed his privilege on the ground that his testimony might tend to incriminate him.

31. CRIMINAL LAW, § 553*—*when improper argument of prosecuting attorney is not reversible error.* A mistaken view of the law expressed by a State's attorney in argument to the jury, *held* not reversible error, nor his use of language denunciatory of the defendant.

32. CRIMINAL LAW, § 542*—*when limiting of argument is not reversible error.* The placing of limitations upon counsel in argument to the jury in a criminal case is a matter largely within the discretion of the trial judge, and unless a reviewing court can say that prejudice resulted from an improper remark made by counsel it will not be held reversible error.

33. CRIMINAL LAW, § 494*—*when defendant may not complain of taking of flashlight pictures in court.* A defendant in a criminal case who assents to flashlight pictures taken in the court room for the use of newspapers cannot complain of same as error on appeal, where no prejudice by reason thereof to him appears.

34. CRIMINAL LAW, § 445*—*what must be preserved and certified to in bill of exceptions.* Affidavits and counter-affidavits as to the conduct of a trial judge during the trial cannot be considered by a reviewing court where the matters complained of were not preserved and certified to in the bill of exceptions by the trial judge.

Error to the Circuit Court of Grundy county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the April term, 1916. Affirmed. Opinion filed February 10, 1917.

JOHN E. HOGAN, WILLIAM A. ROGAN and EDWARD H. MORRIS, for plaintiff in error.

MACLAY HOYNE and FRANK H. HAYES, for defendant in error; HAYDEN BELL, W. H. HOLLY, EDWIN J. RABER and E. E. WILSON, of counsel.

MR. JUSTICE CARNES delivered the opinion of the court.

The La Salle Street Trust & Savings Bank of Chicago, a State bank, closed its doors June 12, 1914, with

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

nominal assets of about $7,000,000, the greater part
of little or no value. It was organized as a State
bank in October, 1912. It then took over the assets
of and was practically a reorganization of a national
bank organized May 10, 1910, controlled by the same
parties. William Lorimer was the president and a
director of each of these banks; Charles B. Munday,
hereinafter called the defendant, was senior vice presi-
dent, and a director, and a controlling spirit in the
management of the bank's affairs; Charles W. Fox
was second vice president, and a director; Thomas
McDonald was cashier, and a director; Harry W. Hut-
tig was a director; John K. Seagraves was associated
with the defendant in various enterprises having busi-
ness with the bank, and was also a State bank exam-
iner. The above named parties were indicted by the
grand jury of Cook county for conspiracy, charging in
different counts of the indictment an unlawful combi-
nation: First, to induce the public to deposit money in
the bank on false pretenses by making false state-
ments to the public through the public press, and
otherwise, as to the financial standing and solvency
of the bank, representing its capital stock was paid
in cash, and that the bank was solvent when, in fact,
the bank was badly insolvent and its capital stock
had not been so paid; second, to obtain from the bank,
by fraud, its money for the alleged conspirators and
for the use of the enterprises in which they were
interested, causing the money of the bank to be loaned
in large amounts to themselves and their concerns
without having sufficient security, and where the finan-
cial standing of the persons and companies did not
justify the credit that was extended; that the bank
by this practice obtained a large amount of notes of
little or no value from the defendant, and Lorimer,
and Huttig, and their concerns, amounting to about
two-thirds of the loans of the bank, and going to make

up its assets; also that the defendant was engaged in a check "kiting" system by means of which he obtained $336,000 of the bank's funds; third, to violate the laws of the State enacted as safeguards to the depositors and stockholders of the bank: (a) The law which requires the capital stock and surplus of the bank to be paid in cash and before the bank is permitted to do a banking business; (b) the law which makes it a crime to make a false statement to the State auditor or any person required to examine into the affairs of the bank with reference to the financial standing or solvency of the bank; (c) the law which prevents any bank from making any loans to its salaried officers or employees, or concerns in the management of which they are actively engaged, without first having the consent of the board of directors, both as to the amount of the loan and its security.

The indictment, as presented, contained thirty counts. One was quashed on defendant's motion in Cook county. Three were *nolle prossed* by the State's Attorney. The defendant obtained a change of venue to Grundy county, where he was tried and convicted and sentenced, and brings this writ of error.

The errors assigned are numerous. We cannot discuss them all in detail within the reasonable limitation of an opinion. There is a record of about 20,000 pages, and an abstract by the defendant of about 1,200 pages. We must observe the oft-repeated rule that the court will not look beyond the abstract to find something upon which to reverse a judgment, but may examine the record for matters to sustain a judgment. Parties bringing a record here for review are presumed to present in their abstract that part of it deemed by them necessary to support their contentions.

It is objected that the grand jury returning the indictment was an illegal body not drawn or summoned in accordance with the statute; that the record shows

the presiding judge directed that fifty names be drawn by the jury commissioner for this special grand jury. The abstract shows "Order for Special Grand Jury of fifty names, July term, 1914, Criminal Court, Cook County." The proceeding was under the Jury Commissioners' Act, applicable to Cook county. Paragraphs 6,859 and 6,860, J. & A. St. ch. 78, apply. There is no express direction in the statute as to the number to be ordered. The record shows that the sheriff served and returned into court the "venire heretofore issued," and that the twenty-three men who returned the indictment were the ones so served by him. The question can only be raised by challenge to the array, or by motion to quash the indictment, on the ground that it was not found by a grand jury legally constituted. *Berkenfield v. People*, 191 Ill. 272, where the earlier authorities are cited and discussed, and where it is said that the motion to quash to be available must point out to the court below that the indictment was found by a grand jury not legally assembled. This case has been cited and followed in *People v. McCauley*, 256 Ill. 504; *People v. Kroll*, 259 Ill. 592; and *People v. Miller*, 264 Ill. 148. In the last case it is also noted that if the legality of the grand jury is challenged it must be done before pleading to the indictment. The defendant entered a motion to quash the indictment while the case was pending in Cook county. That motion was denied except as to one count above noted. It does not appear that the attention of the court was there called to any objection to the grand jury. After the motion was there disposed of, the defendant pleaded not guilty, and afterwards, without withdrawing his plea, entered another motion in Grundy county to quash the indictment. That motion was properly denied because it was made after he had pleaded and without withdrawing or asking to withdraw his plea (*People v. Strauch*, 247 Ill. 220; *McKev-*

*itt v. People,* 208 Ill. 460). We conclude no question of
error in ordering or impaneling the grand jury is pre-
sented here for review.

The defendant entered a motion to compel an elec-
tion between the remaining counts of the indictment,
and assigns error on the ruling of the court denying
that motion and argues that the transactions charged
in the different counts were wholly separate and dis-
tinct, and that the offenses occurred at different times,
and therefore that it was error to permit a trial of
those charges in the same indictment. The charges
are of misdemeanors. There may be a joinder of dis-
tinct misdemeanors, offenses of the same kind, as, for
example, several distinct violations of the liquor law.
The court said in *People v. Jacobson,* 247 Ill. 394-398:

"In the case of misdemeanors the joinder of several
offenses of the same character will not, in general,
vitiate in any stage of the prosecution. In such cases
the practice of quashing the indictment, or informa-
tion, or calling on the prosecution to elect on which
charge he will proceed, does not exist. 1 Chitty on
Crim. Law, 254."

The offenses charged in this indictment are of the
same kind, and are related to each other. We are of
the opinion that the court did not err in refusing to
compel an election.

While the case was pending in Cook county the de-
fendant moved the court to require a bill of particu-
lars. One was there ordered and filed. The abstract
does not show its contents. Later the defendant peti-
tioned the court in Grundy county to require a more
specific bill of particulars, setting out at length the
items concerning which information was so sought.
It was largely an inquiry as to evidence to be fur-
nished by the People. It does not appear definitely
what information was furnished, and what desired
information was withheld in the bill of particulars
already on file. We think, on the authority of *People*

*v. Smith,* 239 Ill. 91; *People v. O'Farrell,* 247 Ill. 44; *People v. Gray,* 251 Ill. 431; and *People v. Donaldson,* 255 Ill. 19, that the court did not err in refusing the petition. The defendant cites the decision of this court in *Gilmore v. People,* 87 Ill. App. 128, where it was held, after discussion of the authorities, error to refuse the defendant a bill of particulars. The opinion was referred to in *People v. Brown,* 150 Ill. App. 365, and it was there said:

"Since that decision the Supreme Court has discussed the matter of bills of particulars in criminal cases in *DuBois v. People,* 200 Ill. 157; *Gallagher v. People,* 211 Ill. 158; and *People v. Smith,* 239 Ill. 91, and has therein established the rule that the trial court has a wide legal discretion in granting or refusing to grant a bill of particulars, and that the refusal to grant a bill of particulars will not be ground of reversal unless some harm resulted to defendant by the refusal."

We are of the opinion, and it will be more fully shown in the following discussion, that no harm resulted to the defendant from the refusal of the bill of particulars. The charges were of matters with which he was familiar. From the record, as abstracted, no error in that respect appears. The defendant challenged the array of petit jurors, charging in detail that most of the requirements of the statute from the first step in preparing a list for jury service by the supervisors down to the drawing from the box of the names for service were violated. The court heard evidence in support of these charges, and overruled the challenge.

Defendant says that in the impaneling of the jury, after the People had tendered four, it sometimes developed on an examination by the defendant that one or more of that four was disqualified, and the court required the defendant to complete the panel of four by examination of other jurors that had not been tendered

by the People. It is argued that the People should be required to first tender four qualified jurors. This question is settled adversely to the defendant's contention in *Spies v. People,* 122 Ill. 1-266; also in *People v. Nylin,* 139 Ill. App. 500, affirmed in 236 Ill. 19.

At the beginning of the trial the court appointed a special bailiff to summon jurors that might be required outside of the regular panel, and have charge of the jury. After a part of the jurymen had been secured, the defendant filed a petition alleging that the bailiff was not summoning any Democrats or Catholics, and that he, the defendant, was a Catholic, and asking that the bailiff be put on the stand and interrogated and then discharged, and all the jurors that had been so selected discharged. The court denied the motion. The defendant's petition was verified, but its contents was necessarily hearsay. It is not claimed that he obtained this information from his personal observation, or from the bailiff. He did not offer any proof of its truth. There was no charge in the petition that the jurors summoned were unfair or biased. It is the duty of the officer with his venire to exercise his best judgment. There was no showing that he did not do so. On the motion for a new trial this subject was reinvestigated and affidavits on both sides were heard. Many of the charges in the petition were shown to be untrue. The bailiff did summon Democrats, and summoned men of numerous religious belief, and men not affiliated with any church. He did not summon Catholics, but it was shown there were a small number of Catholics competent for jury service in that county. The bailiff testified that until this petition was filed he did not know that the defendant was a Catholic, and that he was not governed by any religious feeling thereafter, but picked out the men he considered competent as he found them.

We discover no substantial error in the action of

the court, or any other public authority, in procuring the jury that tried this case, but if there were informalities and failures to comply with the strict requirements of the law they could not be held reversible error without any showing that the defendant was injured by reason thereof. The defendant does not abstract the examination of the jurors on their *voir dire,* and we assume that such examination showed them to be competent and free from objection; therefore, that the defendant was tried by a fair, impartial and competent jury, and for that reason objections as to informalities and irregularities in procuring them cannot avail him. *Henry v. People,* 198 Ill. 162, 185; *Hartshorn v. Illinois Valley Ry. Co.,* 216 Ill. 392; *Siebert v. People,* 143 Ill. 571; *People v. Brown,* 150 Ill. App. 365, 371.

It is repeatedly asserted, but not much argued, that the evidence does not sustain the verdict. In our opinion the evidence showed beyond question that when the bank suspended business its assets were largely worthless. It had been in operation about twenty months; or, treating the national bank and the State bank as the same enterprise, about four years. It is insisted by the defendant that the fact that such a large mass of the securities was found comparatively worthless when the bank suspended business, or in a short time thereafter when the assets got into the hands of public officers, does not mean that the securities were worthless when taken; that it is common knowledge that the property of any business immensely shrinks in value when it ceases to be a going concern. It is true that some matters may be determined from common knowledge presumed to be possessed by a jury and the court. All matters must be considered in the light of such knowledge and experience. If we are to apply that test here, in our opinion there is a wide distinction between banking enterprises

and business concerns in respect to the stability of
their assets. A legitimate business may have its capi-
tal largely invested in perishable property, or em-
barked in speculative enterprises, but a bank must
not so invest its capital and depositors' money. It
may sometimes unwittingly do so; but it cannot em-
bark in wholesale investments of that kind without
violating not only universal well-recognized banking
principles, but also the laws of the land enacted for
the safety of depositors' funds in banks. In the pres-
ent case the defendant and others of his alleged co-
conspirators were severally interested in and largely
controlled various business enterprises which they
were financing with the funds of the La Salle Street
Trust & Savings Bank. They organized other banks
that were connected with that bank under practically
the same control. They used these banking corpora-
tions and business companies and corporations with
much ingenuity, making each of them an instrument
to extract money from the principal bank. The forms
of banking were observed, and something with the
appearance of commercial paper was taken to repre-
sent the various transactions. Most of the capital
stock of the national bank was, in effect, paid by loans
direct or indirect to the stock subscriber out of the
funds of the depositors. The capital stock of the State
bank was theoretically paid in cash. The defendant,
and others of the alleged co-conspirators, got posses-
sion of the required amount of currency to submit
to the State officers to count. It was counted, and,
after the momentary use for that purpose, handed
back to the real owner. Moneys and credits of the
different banking corporations and companies were
shifted from one to the other. The life of most of
these enterprises, in which the defendant and Lorimer
were interested, seems to have depended not only on
the money it had wrongfully obtained from the bank-

ing institutions, but upon obtaining more money without security. The conclusion is irresistible that there was a combination by the defendant, and at least some of the others indicted with him, to do many illegal acts charged in the indictment growing out of and connected with the management of the La Salle Street Bank. Any supposition that the various transactions complained of were the result of the defendant's ignorance of banking principles and overconfidence in the value of securities taken does violence to the common sense of any one at all familiar with business transactions. The defendant testified in his own behalf, and we think any jury composed of men familiar with business as conducted by banks would, on his own testimony, have believed him guilty of many of the charges contained in the indictment. The evidence clearly shows that in the various transactions by which assets of the La Salle Street Bank were dissipated in dealing with the concerns in which the defendant and his associates were interested, there was no honest effort on the part of the bank or banks, or their directors, to ascertain the value of the securities, or the condition of the concerns. Practically the whole matter was dominated by the defendant and Lorimer, or Huttig. The discount committees and directors approved without comment. It was a *pro forma* matter so far as the other officers of the bank were concerned, and turned out to be largely a *pro forma* matter so far as taking securities were concerned. In our opinion the evidence not only warranted the verdict, but we are unable to see on what ground its consideration can be reasonably said to lead to any other conclusion.

Numerous objections are urged to the rulings of the court on evidence. One group is as to the proof of matters contained in books and papers by witnesses produced by the People, in which it is claimed the rule

of best evidence was violated. The trial necessarily called for the production of evidence to be gleaned from a great number of books and written instruments. Many of the rulings complained of are justified by the rule announced in *People v. Gerold*, 265 Ill. 448, 460. It is there said:

"Where the originals consist of numerous documents, books, papers or records which cannot conveniently be examined in court, and the fact to be proved is the general result of an examination of the whole collection, evidence may be given as to such result by any competent person who has examined the documents, provided the result is capable of being ascertained by calculation."

(Citing authorities), and added:

"In many instances any other method would cause a great loss of time and tend to confuse the jury. In a trial involving so many details and occupying so much time as the case under consideration, expert testimony as to what was shown by an examination of the books, accounts and records was the only mode of presenting an intelligent view of the case to the jury."

Other rulings were correct under the rule permitting such evidence as to papers relating to collateral matters. Sometimes the proof was introduced without objection, or an objection was made that did not reach the matter here complained of. Sometimes such proof was only an attempt to get facts into the record about which there was no dispute and no reasonable doubt, and the facts so elicited were abundantly proven by other competent evidence. We do not discover any controverted fact of any importance material to the issue that got into the record by an erroneous ruling of the court on questions of best evidence. We do not find every ruling technically correct. It is impossible that a case of this magnitude should be tried with such a multitude of objections to the evidence as this

record shows and every ruling be correct. It is suffi-
cient if the defendant was not injured by any erro-
neous ruling, and we conclude he was not so injured by
any ruling of the court falling under this group of
objections. And as to many of them he cannot here
complain, because a general objection will not suffice
where a special objection is necessary. *O'Donnell v.
People,* 224 Ill. 218, 224. There are several instances
where the court denied defendant's motion to strike
out testimony, in which his ruling could not have been
otherwise, because the motion included admittedly
proper testimony, and the objectionable part was not
pointed out. *People v. Walczniak,* 273 Ill. 76.

The People's witness McDougal was cross-examined
by the defendant as to what he had learned of the
condition of the bank from his conversation with the
defendant, with an effort to create an inference that
the banking troubles under investigation were the re-
sult of the defendant's inexperience with banking in
large cities. The People were permitted to show by
this same witness on redirect examination that in his
opinion the condition of the bank indicated lack of integ-
rity as well as a lack of experience. We do not think
the testimony in the connection in which it was given
was very serious error. The situation was correctly
expressed by the trial court in ruling on this matter.
He said: "As I understand, this witness expressed an
opinion as to Mr. Munday, his unfitness for that posi-
tion, and stated that that was one of the grounds that
he based that opinion on, and intimated there would be
others, and on redirect examination, in my opinion, he
has the right to state the other grounds and the other
basis of that opinion." Afterwards, the defendant
moved to exclude the entire answer, and the court said
part of the answer was admissible, and therefore the
motion might be overruled, but he would take it upon
himself to exclude a part of the answer, and thereupon

told the jury that he had concluded to strike from the record and from their consideration that portion of the testimony given by Mr. McDougal on redirect examination running to the alleged personal integrity of Mr. Munday; that they should not consider that testimony; that the court was of the opinion that he had made a mistake in admitting it; that counsel would not be allowed to debate it upon the final argument, and that it should operate in no way upon the mind of the jury upon the final consideration of the case. While it is true that improper evidence may sometimes be introduced of such character that the error cannot be cured by withdrawing it from the consideration of the jury, we think in the present instance whatever error there was in admitting the testimony was cured by its withdrawal. *People v. Rardin,* 255 Ill. 9, 16; *Simons v. People,* 150 Ill. 66; *Chicago & A. R. Co. v. Fietsam,* 123 Ill. 518.

The People introduced much evidence from books and writings of the various institutions with which the defendant had been connected, and objection is argued as to various items of that evidence on the ground, as we understand it, that it is in the nature of an inquisition compelling the defendant to testify against himself. These books and writings were mostly obtained from receivers and officers of court into whose hands they had fallen on failure of the concerns. They were not taken by the People from the defendant's possession, but if they had been it was not error to use them. A similar objection was not sustained in *People v. Smith,* 144 Ill. App. 129, affirmed in 239 Ill. 91. It was held in *Trask v. People,* 151 Ill. 523, that the fact that letters and papers were unlawfully obtained from the possession of a party charged with crime would afford no valid objection to their admissibility in evidence against him.

It is argued that witnesses were permitted to tes-

tify from written memoranda in violation of the rule of evidence permitting witnesses to so refresh their recollection.    This criticism must be considered remembering the immense volume of testimony in this case, and the various facts that were otherwise proven beyond doubt and would incidentally become a part of the witnesses' testimony.    The rule as to the use of memoranda by a witness is stated and authorities collected in *Diamond Glue Co. v. Wietzychowski,* 227 Ill. 338; *Richardson Fueling Co. v. Seymour,* 235 Ill. 319; *People for use of De Witt County v. Maddox,* 176 Ill. App. 480; and *Employers' Liability Assur. Corporation v. Kelly-Atkinson Const. Co.,* 195 Ill. App. 620, 631.    We do not find any violation of that rule in this case that, in our judgment, prejudiced the defendant.

The defendant insists that there is no adequate proof that the securities taken by him and his associates were entirely inadequate at the time they were taken; that evidence of their worthlessness at the time the bank suspended business falls far short of proof that they were not good at the time the bank took them.    It is true that the belief that the banking institutions took insufficient securities in making loans to their directors and officers and concerns that they controlled is partly based on the condition of the assets when the bank suspended business.    But it is to be remembered that these securities had been taken within a comparatively short time, and we think it a violation of the presumption of common sense supposed to be possessed by average men to say that the condition of a bank's securities to-day, taken for money loaned a few months ago, is not evidence tending to show whether those securities were or not of value when taken.    It is no doubt true that various securities might be good six months ago and bad now, but usually as to such items it would readily appear why that was true.    In the present case, the testimony leaves no doubt whatever

that the securities were inadequate, or worthless, when taken. To say that a jury might have found from the evidence that the great amount of comparatively worthless securities in the possession of the banks at the time they closed business were worthless because of depreciation after they were taken, or that any considerable part of them was worthless for that reason, is to presume a want of intelligence and knowledge of common business affairs that jurors should possess, and are presumed to possess and apply in the examination of facts submitted for their consideration.

It is objected that counsel for the People were permitted to ask the defendant improper questions on his cross-examination. The defendant in many instances made highly improper answers to proper questions put by the State's Attorney, and often made remarks which were not answers, and behaved himself in a contemptuous manner towards the prosecuting attorney. To a large extent the questions complained of were provoked by him in this manner. The prosecutor, representing the People, is not licensed to go beyond his legal rights in the examination of witnesses because his adversary may be exceeding his legal rights; yet, the oft-repeated rule that a party to a suit cannot complain of an error that he himself invited or provoked should receive some consideration; otherwise, it might become the purpose and object of a defendant and his counsel, during the trial, to entrap and provoke counsel for the State to some action technically wrong that might result in a reversal of a just judgment. We do not find that the defendant was prejudiced by any ruling of the court in this respect.

We do not think the court erred in admitting various items of evidence of the value of the properties in question over the defendant's objection that the witnesses were not qualified to so testify. Some of those wit-

nesses did not have an intimate acquaintance with the property of which they were speaking, but that went to the value and not to the admissibility of their testimony. "All persons who are acquainted with property and have opinions of its value may give their opinions to the jury, together with their knowledge of the property and the acts upon which the opinions are based," citing authorities. *Chicago & W. I. R. Co. v. Heidenreich*, 254 Ill. 231, 239.

Error is assigned and argued on the action of the court in giving and refusing instructions. At the close of the trial the defendant tendered 272 instructions. The court refused over 200, and there is no suggestion that he did not necessarily and properly so refuse all but three of them. There was no necessity for offering such a volume of instructions, and can be no excuse for offering so many that were unnecessary or improper. An examination of defendant's instructions given by the court shows that every proposition of law proper to be stated in his defense was contained in his given instructions, framed with much ingenuity, and that the court would have been justified in refusing more of his proffered instructions. The first of the three refused instructions complained of stated that before there could be a verdict of guilty under the first count of the indictment the State must prove beyond a reasonable doubt that the defendant conspired to defraud all persons and corporations there named by means of false pretenses. The count was a general charge of a conspiracy to defraud a number of persons and corporations. Defendant relies on *Lowell v. People*, 229 Ill. 227, 237, as authority that this instruction should have been given; that under an indictment charging conspiracy to defraud several people named there must be strict proof that the conspiracy was to defraud all those people. The case does not so hold. The law no doubt is that a charge in an indictment of

a conspiracy to defraud ''A'' is not sustained by proof of a conspiracy to defraud ''B.'' Defendant's counsel say that it is like the rule in larceny, that the People must prove the property stolen as described in the indictment. This may be true, but in larceny the People are not required to prove the theft of all items of property described in the indictment. The instruction was properly refused. Another similar instruction was properly refused for the same reason. The third refused instruction was framed to advise the jury that they were the judges of the credibility of the witnesses, and ''should'' take into consideration in determining the facts proven the interest and bias, knowledge and opportunity to know the facts about which the witnesses speak, etc. This instruction used the word ''should,'' which is more forceful than the word ''will,'' much complained of by defendant in his criticism of instruction No. 6, given for the People, hereafter discussed. It fails to limit the jury to a consideration of interest and bias, knowledge and opportunity of a witness, as shown by the evidence. It was only a cautionary instruction and was sufficiently covered by other instructions. There was no error in refusing either of these three instructions.

The defendant complains of eight of the People's given instructions. No. 31 reads as follows:

''The court further instructs the jury that although a defendant has a right to be sworn and to testify in his own behalf, the jury are not bound to believe his testimony, but they are bound to give it such weight as they believe it is entitled to, and his credibility and the weight to be attached to his testimony are matters exclusively for the jury; and the defendant's interest in the result of the trial is a matter to be taken into consideration by the jury in determining the weight that ought to be given to his testimony, and in considering the amount of credit or value you will give to the testimony of the defendant in this case

you may take into consideration his interest in the case, his desire to evade punishment for the crime with which he is charged, and all other interests or motives that would likely surround or affect testimony of a person similarly surrounded or situated.''

The first part of this instruction was approved in *Henry v. People*, 198 Ill. 162, 194, on the authority of cases there cited and discussed. The rest of the instruction is similar to one approved in *Doyle v. People*, 147 Ill. 394, 397. The part of the instruction most objected to here is calling the attention of the jury to the defendant's desire to evade punishment. The word ''avoid'' was used in the *Doyle* case, *supra*. That instruction was copied in *People v. Terrell*, 262 Ill. 138, 146, where it was said not error to give it. Between these two cases in point of time is *People v. Arnold*, 248 Ill. 169, where similar language used in an instruction in a somewhat different connection was held error. The court did not expressly overrule *Doyle v. People* in that respect, and we think because of the decision in *People v. Terrell, supra,* we must regard it as the law, and that we, at least, are not justified in saying that the difference in wording of the instruction in the present case should be regarded as reversible error. The presumed interest of every defendant in a criminal prosecution is to avoid punishment. There is no question that a jury may be properly told to consider his interest in the case, which would mean, we think, to the jury his desire to avoid punishment. ''Evade'' means more than ''avoid'' to people familiar with distinctions in meaning of words. It should not have been used in the instruction; but it is probable in this great volume of instructions read to the jury it made no practical difference to them which word was used.

People's instruction No. 35 was to advise the jury that they were the sole judges of the credibility of the witnesses, and should take into consideration, so far

as shown by the evidence, the character of the witnesses, their manner on the stand, their interest, if any, in the result of the suit, their relation to or feeling towards either the defendant or the State, and the probability or improbability of their statements. This is objected to because it did not include all the elements to be considered by the jury in determining the credibility of a witness, and especially that it omitted the element of his means of knowledge. The instruction did not undertake to tell the jury all the elements that they should consider. It is perhaps impossible to frame an instruction reciting every consideration that might properly influence a jury in judging of the relative credibility of witnesses. The propriety of such instructions has sometimes been questioned by the courts, but they have often been held not substantial error. *North Chicago St. R. Co. v. Wellner,* 206 Ill. 272, and cases there discussed.

People's instruction No. 6 read as follows:

"The court further instructs you that in determining the question of the existence of a conspiracy you will take into consideration the relations of the parties to one another, their personal and business association with each other and all the facts in evidence, if any, that tend to show what transpired between them at or before the time of the alleged combination, as well as the acts performed by each party subsequent to such alleged combination, if any, in respect to the subject-matter of the alleged conspiracy, and from these facts and circumstances, and from all the evidence in the case, you will determine whether a combination in fact existed and whether such combination was illegal in its inception or became that way any subsequent time."

It is said this instruction is bad. Among other reasons that it tells the jury that they "will" take into consideration, etc.; that the jury should not be told they "should" or "ought" to consider certain things, but should rather be told that they "may" consider,

citing *Otmer v. People,* 76 Ill. 149; and *People v. Barkas,* 255 Ill. 516. This question was discussed in *People v. Schultz,* 260 Ill. 35, 42; *Lyons v. Chicago City Ry. Co.,* 258· Ill. 75; and *People v. Rees,* 268 Ill. 585, 594. We think the conclusion from Illinois cases is that the jury may be told what they should or must do if there is no question about their duty, but where they have discretion it must not be limited by some imperative word. · *North Chicago St. R. Co. v. Zeiger,* 182 Ill. 9. The instruction seems to have been copied from one given in *Ryan v. United States,* 216 Fed. 13, 18, except that it is more guarded in the present case by the insertion of the words "if any" and "from the evidence." It was not regarded erroneous by the Circuit Court of Appeals. The jury were in that case told to consider acts performed by each party subsequent to the alleged combination in respect to the subject-matter of the alleged conspiracy. It is suggested in the present case that the jury might, under that clause in the instruction, consider acts performed by the alleged conspirators after the common enterprise was at an end, which they should not do. *People v. Blumenberg,* 271 Ill. 180. We do not think there can be any fair presumption that the defendant was so harmed. The jury were advised in People's instruction No. 11 that acts of alleged co-conspirators, after the abandonment of the transaction, were not to be considered.

This instruction No. 11 is complained of because it told the jury if a conspiracy is established "the act or declaration of one conspirator done or made in the prosecution of the common enterprise might be considered against all co-conspirators, on the ground that it contained an assumption that there was an act or declaration to be considered, and that there was a common enterprise." There was a common enterprise if the conspiracy was established, and the in-

struction only told the jury to consider the common enterprise if "the conspiracy or combination is established."

Instructions Nos. 3 and 12 are complained of because it is alleged they assume combined and concerted action. Each of them was an abstract proposition of law and not open to that objection.

People's instruction No. 19 was to the effect that it was not necessary for the State to prove each and every one of the counts of the indictment, but if the State proved any one or more of the counts beyond a reasonable doubt then they should return a verdict of guilty. It is argued that this instruction is error in any case where there is one bad count in the indictment, and the civil cases of *Cantwell v. Harding,* 249 Ill. 354; *Schlauder v. Chicago & S. Traction Co.,* 253 Ill. 154; and *Bale v. Chicago Junction Ry. Co.,* 259 Ill. 476, in which instructions to find for the plaintiff if any count of the declaration is proven were held bad because of one bad count in the declaration, are cited. The error of such an instruction consists of informing the jury that a verdict might be properly found on proof of facts that are insufficient to sustain one. We presume the rule would apply to criminal cases, although no authority is cited. It is argued that the fourth count of the indictment is bad because it does not refer definitely enough to the time of the offenses charged, and the time when certain things were alleged to be done; that the words "then and there" should have been interpolated two or three times to relieve the count of this objection. We do not find the count abstracted in full, but upon an examination of the record there seems no ground for suspicion that the jury would have been misled by the reading of that count in their consideration of what was necessary to prove to sustain a conviction. There is a legal presumption that they read it, and read each count in the indictment. If they did, they read them in the

light of their own common understanding of written and printed statements of fact in which it is not usual to interpolate "then and there" so often as may be necessary to comply with the technical rules of pleading.

The instructions read as a whole were quite as favorable to the defendant as he could ask, and no instruction was given for the People that should be held reversible error.

Error is assigned on the argument of counsel for the People. The court permitted the State's Attorney, over objection, to comment on the fact that the alleged co-conspirators, Lorimer and Huttig, were not called by the defendant to testify in the case. The defendant throughout the trial had endeavored in many ways to get into the case that the whole trouble was a political persecution of Lorimer, and so far as he got matters of this kind, that were entirely outside of the record, before the jury, it did not license the State's Attorney to make any improper reply or remark concerning the same subject; still, as we have before suggested, in considering an objection made by a party to a suit it is a pertinent inquiry whether he, himself, induced or provoked the act or remark that he complains of. We are referred to no Illinois case on the question of the right of the State's Attorney to so comment on the failure of the defendant to produce Lorimer and Huttig as witnesses. It must be conceded that the general rule is that it is a subject of fair comment that a party has it in his power to produce a witness and does not produce him. The question is whether that rule should be changed in the case of parties indicted jointly with the defendant but not on trial. The statute forbidding comment by the State's Attorney on the failure of the defendant to testify does not seem to touch this question. It is true the defendant could not have compelled Lorimer and Huttig

to testify if they had claimed their privilege on the ground that their testimony might tend to incriminate them. But it is sometimes true in the trial of causes that some witness within the power of a party to produce might, for the same reason, refuse to testify if he was put upon the stand; yet, it would not occur to any one that that reason forbade such comment. It was held in *People v. YeFoo,* 4 Cal. App. 730, 89 Pac. 454; *State v. Madden,* 170 Iowa 239; *State v. Mathews,* 98 Mo. 131; *People v. Ruef,* 14 Cal. App. 576, 114 Pac. 71; and *McElwain v. Commonwealth,* 146 Ky. 104, 142 S. W. 237, that such comment, under similar circumstances, was legitimate argument. The State's Attorney also said to the jury, in substance, that it was the duty of the defendant to call those witnesses. It is said that this is not a correct statement of the law, and we agree that it is not. Its insertion in an instruction would have been error, but in criminal cases counsel are permitted to argue the law to the jury. The defendant fully availed himself of that privilege. There is no question that the State's Attorney had the same right. We know of no precedent for holding a mistaken view of the law expressed by the State's Attorney in his argument to the jury reversible error. Counsel for the People in their argument to the jury used language denunciatory of the defendant, but under the rule announced in *People v. Strauch, supra; People v. Hagenow,* 236 Ill. 514; *Commonwealth Elec. Co. v. Rose,* 214 Ill. 545; and *Crocker v. People,* 213 Ill. 287, we do not think there is anything in that respect that should be held substantial error.

One of the People's counsel in his argument referred to the *Dougherty* and *O'Connor* cases. If they were not known to the jury the remark did no harm; and if they were, there is no prohibition against an attorney referring to historical or well-known cases. *Siebert v. People, supra; Gallagher v. People,* 211 Ill. 158,

169; and *People v. McCann*, 247 Ill. 131, 170. At least there is nothing complained of in the argument for the People that should, under the authority of those cases, be held reversible error. In hotly-contested cases the limitations of the best of human nature do not permit the careful weighing of every word and sentence spoken by attorneys in the conduct of the case, and the argument to the jury. It is said in the cases last cited that the matter is one to be left largely to the discretion of the trial judge. The surrounding circumstances and the provocation, if any, for the remark, are all to be considered. The final question is, What effect might it have on the jury? This much depends on matters within the immediate knowledge of the judge, some of which do not appear in the record; therefore the rule, we think, is that, unless the reviewing court can say that the defendant was prejudiced by such improper remark, it will not be held reversible error.

Flashlight pictures of scenes in the court room were taken several times for the use of Chicago newspapers, and it is argued that this was erroneous. Before it was done the trial judge, in the absence of the jury, submitted to the attorneys for both parties the question whether it should be permitted. Defendant's counsel made no objection, and made remarks implying a consent. It does not appear that any particular thing happened in connection with the matter that would prejudice the defendant. He cannot be permitted here to complain of something that he assented to.

On the motion for a new trial, many affidavits were filed attributing improper conduct to the trial judge in the court room during the trial while court was in session, and counter-affidavits denying such conduct. We do not find that the judge anywhere in the bill of exceptions certified that any such matters took place.

What was said and done in court in the presence of the judge during the trial must be preserved in the bill of exceptions certified by him. Affidavits of bystanders, or people engaged in the trial, cannot be considered as substitutes for recitals of fact in the bill of exceptions. Such practice would lead to absurd results. The authorities are numerous and uniform on this subject. Among the cases are *Mayes v. People,* 106 Ill. 306; *Peyton v. Village of Morgan Park,* 172 Ill. 102; *Deel v. Heiligenstein,* 244 Ill. 239; and *People v. Strauch,* 153 Ill. App. 544, affirmed in 247 Ill. 220. We do not find that at the time of these alleged occurrences defendant's counsel objected to what was taking place, or indicated to the court any dissatisfaction therewith. They could not keep silent and permit a course of conduct objectionable to them, and then complain of it on motion for a new trial. We see no reason to doubt that the trial was fairly conducted by the judge. Defendant's counsel say that he overruled ninety-eight per cent. of their objections entered during the trial. This of itself may mean no more than the conceded fact that he properly refused more than 200 of their proffered instructions. He was required to pass on the validity of each objection without trying to establish any percentage in his rulings. So far as we can see he did so.

The record is not free from error. No such record can be. We regard the proof as establishing the guilt of the defendant beyond all question, and under the authority of *People v. Cleminson,* 250 Ill. 135; *People v. Burger,* 259 Ill. 284, 286; *People v. Strosnider,* 264 Ill. 434; and *People v. Miller, supra,* there are no errors in the record that require a reversal of the judgment. The judgment is therefore affirmed.

*Affirmed.*