THOMASMA v. CARPENTER.

1. ACCOUNT STATED—DEFINITION—WORDS AND PHRASES.
   An account stated is defined as an agreement between parties who have had business dealings that certain items of account arising out of their mutual transactions and the balance struck are correct, together with an express or implied promise of payment.[1]

2. SAME—BROKERS—ADMISSIONS—STATEMENT OF ACCOUNT.
   In an action for commissions due to brokers under an

[1] The authorities on the question what constitutes an account stated are gathered in a note in 27 L. R. A. 811. And as to the effect of statement of amount due on instrument for payment of money to sustain action as on stated account, see note in 24 L. R. A. (N. S.) 1237.

alleged special contract denied by defendant, the trial
court erred in charging the jury that if they found plain-
tiff sent two or three statements of his claim at intervals
of about a month, which were received by defendant and
that the latter did not protest but allowed them to stand
unquestioned, that fact might be treated as an admission
of liability on defendant's part; since a claim for com-
missions due under a special agreement was in no sense
an account stated, the fact of any contract or dealing at
all being denied by defendant.

3. SAME—CONTRACTS.

A claim which is disputed in its entirety by defendant,
should not be treated as an account stated when it did
not arise out of mutual dealings or a balance struck and
agreed upon: the rule that the receipt of statements sent
at intervals, without protest, amounts to an admission of
their correctness, applies only to an account stated.

Error to Kent; Brown, J. Submitted April 11,
1913. (Docket No. 54.) Decided May 28, 1913.

Assumpsit by Harry Thomasma against Richard E.
Carpenter for services performed. Judgment for
plaintiff. Defendant brings error. Reversed.

*Hatch, McAllister & Raymond,* for appellant.

*John J. McKenna* and *Charles M. Owen,* for appellee.

STONE, J. This is an action of assumpsit brought
upon an express verbal contract alleged to have been
entered into between the parties, on or about August
1, 1911. The plaintiff was the agent for the sale of a
vacant factory building in Grand Rapids, known as
the "Ocker & Ford property," and he was to receive
from the trustees for the owners of the property, if
he succeeded in making a sale, a commission of $1,000.
The defendant was attempting to organize a corpora-
tion for the manufacture of Paris green and other
products, and looked at the property with a view of
having his proposed corporation buy it. Plaintiff was

desirous of selling the property, as in that case he could earn his commission of $1,000. With that end in view, and at the suggestion of one of the trustees, he interested himself in procuring subscriptions to the capital stock of defendant's proposed corporation, and went with defendant on several occasions to interview prospective subscribers. In interviewing different parties it was found that some raised objections to the purchase of the Ocker & Ford property.

The following is plaintiff's testimony of the making of the alleged contract:

"So after one or two of these objections had been raised, Mr. Carpenter said:

"'Now, this is going to handicap us, to tell everybody that we are going to buy this plant. While I know when we get around to it we will take the plant, I do not think it is a wise thing to tell these people, or insist that we are going to buy this plant. I will tell you what I will do with you. If, for any reason, I should not buy this plant, then I will pay you the $1,000 that you are getting out of the sale of this plant, providing you help me go ahead with this proposition.'

"This was when we were driving along in the buggy, and at that he reached over and shook hands with me on that proposition. I said: 'All right, Mr. Carpenter; we will continue to go to it!'"

The defendant denied such conversation or the making of such contract. He testified on direct examination:

"I never agreed to pay Mr. Thomasma anything for his assistance in obtaining subscriptions to the stock."

This conversation, which was alleged by plaintiff to amount to a contract, is not claimed to have occurred until after plaintiff had spent several days going about with defendant interviewing prospective subscribers to stock in defendant's proposed company, and trying to induce them to subscribe. Plaintiff did not claim to be working under any agreement with defendant before that time. He had been assisting

defendant in the hope that, if sufficient stock were sub-
scribed so that the company could be organized, such
company would buy the property he had to sell, and
he would so earn his commission, which was to be
paid by the owners of the property.

The declaration contained a count upon a special
contract, which was fully set forth in the first count,
and under which the plaintiff claimed damages in the
sum of $1,500. To this declaration the common counts
were added, among them the count for an account
stated. The plaintiff's bill of particulars was as fol-
lows: "To amount due for services and assistance in
procuring subscriptions to the capital stock of the
Udell-Carpenter Company in accordance with agree-
ment, $1,000"—to which was added a claim for in-
terest. Before this suit was brought, plaintiff mailed
to defendant two or more statements reading as fol-
lows: "To services rendered, $1,000." After receiv-
ing these statements, and a few weeks before this suit
was brought, defendant told plaintiff that he owed
him nothing.

Defendant's testimony on cross-examination on this
subject is as follows:

"*Q.* And you never told him you would pay him?
"*A.* No.
"*Q.* And you never told him you would not pay
him?
"*A.* I did tell him I would not pay him anything.
"*Q.* What?
"*A.* I told him that I would not pay him anything.
The last conversation we had he demanded his money,
and I said: 'I don't owe you anything; I won't pay
you anything.'
"*Q.* That was the last conversation before this suit
was commenced?
"*A.* Yes, sir."

The plaintiff testified that he had two or three tele-
phone conversations with defendant in which the
latter promised to call at his office and settle up; but,

in the last conversation before suit was brought, defendant said he was not going to pay plaintiff anything.

It will be noted that there was a distinct issue of fact between these parties as to whether defendant had ever promised plaintiff to pay the claim sued upon, and whether there was any indebtedness from the defendant to the plaintiff. The court charged the jury as follows:

"I charge you that where statements of goods sold or services rendered, showing the balance claimed to be due, are presented monthly and allowed to pass unnoticed or unquestioned, satisfaction with the same and acquiescence in the amount will be implied. So that if you find the plaintiff, Harry Thomasma, called the defendant, Richard E. Carpenter, over the telephone and stated to him that he (the defendant) was indebted to him in the sum of $1,000, and that the defendant then and there promised to call at the office of the plaintiff and pay him said amount, and if you further find from the evidence that the plaintiff mailed to the defendant statements of his account showing the amount claimed to be due plaintiff from the defendant for services rendered as claimed in this case, and that said statements were sent on two or three different occasions at intervals of one month, as claimed by the plaintiff, and were received by the defendant, and that defendant did not protest against the same, but allowed them to pass unnoticed and unquestioned, you have a right to treat this conduct on the part of the defendant as an admission on his part that he was then and there indebted to the plaintiff in the amount and manner claimed in said statements and that he was satisfied with and acquiesced in the claim. I will add this part: But if the defendant upon being called by the plaintiff by telephone, and, at or about the time of receiving the statement from plaintiff, denied to the plaintiff that he owed the plaintiff anything, told him he did not owe him anything, and refused to pay plaintiff anything—denied owing the plaintiff and denied all liability to plaintiff—then the sending of statements will not be considered as

any evidence of obligation or liability on the part of the defendant to the plaintiff. The plaintiff claims that defendant, after the company was organized, stated to him over the telephone that he would pay him $1,000 in a short time. The defendant denies this statement of plaintiff and claims that he never admitted any liability to plaintiff, and that he told plaintiff over the telephone he owed him nothing and would not pay him anything. So you will consider this evidence with the other evidence in the case in determining your verdict."

The trial resulted in a verdict and judgment for the plaintiff, against the defendant, for $1,032.93 damages and costs to be taxed. The defendant brings error, and error is assigned on the charge: (1) Because the principles governing an account stated are not applicable to this case, for the reason that it is an action upon an express contract, and not upon an open account. (2) The charge gives to the fact of mailing a statement the effect of evidence to prove the making of the contract and liability thereunder. It gives to it the effect of an admission on the part of the defendant that he made the contract, and that he was liable to pay the plaintiff the sum of $1,000. The errors assigned upon this charge may well be considered together.

The evidence was to the effect that before the suit was brought defendant had distinctly informed plaintiff that he did not owe him anything, and refused to pay his claim. And it is urged by appellant's counsel that the question of acquiescence in the statements rendered was not in the case and should not have been submitted to the jury. It was urged that under the issue joined there could be no recovery upon an account stated, and for that reason it was error to submit any question involving the subject of an account stated to the jury. It is the claim of the plaintiff that he was not seeking to recover upon an ac-

count stated; that he had declared upon his original contract, and offered proof of the same. And it is urged that, taking the charge together, the trial court charged the jury that plaintiff must prove his original contract before he could recover. In our opinion, the infirmity in the charge is in this: That the trial judge applied to the sending by the plaintiff of his claim, and the fact that the defendant did not for some time thereafter repudiate the claim, the rule which applies to a stated account, or an account rendered, and the jury were told that if they found—

"That said statements were sent on two or three different occasions at intervals of one month, as claimed by the plaintiff, and were received by the defendant, and that defendant did not protest against the same, but allowed them to pass unnoticed and unquestioned, you have a right to treat this conduct on the part of the defendant as an admission on his part that he was then and there indebted to the plaintiff in the amount and manner claimed in said statements and that he was satisfied with and acquiesced in the claim."

In 1 Am. & Eng. Enc. Law (2d Ed.), at page 437, it is said:

"An account stated is an agreement, between parties who have had previous transactions of a monetary character, that all the items of the accounts representing such transactions are true and that the balance struck is correct, together with a promise, express or implied, for the payment of such balance."

In Abbott's Trial Evidence (1st Ed.), p. 458, that author says:

"An account stated is an agreement between persons who have had previous transactions, fixing the amount due in respect of such transactions and promising payment."

See, also, 1 Cyc. p. 364.

The rule laid down by the trial court does not apply

to a claim that an express contract exists. Such claim is in no sense an "account," within the meaning of the rule as applied to an account stated, or an account rendered. The very fact of the account between the parties implies a dealing, which, as matter of fact, was denied by the defendant in this case. The giving of this portion of the charge may be said to be begging the whole question whether there was any contract relation existing between the parties. The rule invoked by the court was not applicable to the case. The case nearest in point, to which our attention has been called, is that of *Valley Lumber Co.* v. *Smith,* 71 Wis. 304 (37 N. W. 412, 5 Am. St. Rep. 216). It is there said that the rule of law that, where an account is rendered and no objection taken, it is *prima facie* evidence of the correctness of such account, has no application where the claim is the subject of a special contract. Orton, J., said, speaking of the trial court:

"The court, in charging the jury, after reciting the testimony of Carson, the president of the company, that he had presented to the defendants a bill or account containing this charge of $200 for the use of the camps, and that the defendants made no objection to it, but kept the bill, said to the jury:

" 'Where a statement of account is rendered, and nothing is said about it, and no objections made, of course that is *prima facie* evidence of the correctness of the bill. * * * It is a sort of admission on his part of the correctness of the bill.'

"Aside from the fact that this claim is not a matter of book account, or of an account rendered, or bill presented, but the subject of a special contract, and such a principle of law has no application to it, it was unfair for the court to ignore or suppress the testimony of the defendant Smith that he did at the time object and insist that he had never hired or rented the camps."

There is much learning in the books upon the subject of an account stated. Some of the courts have refused to extend the rule beyond controversies be-

tween merchants. Such, probably, is not the rule of today in most of the States.

In the case of *Anding* v. *Levy*, 57 Miss. 51, it was held that the doctrine of liability from retaining a stated account without objection was only applicable between merchants. This case is found reported in 34 Am. Rep. at page 435, where there will be found a note upon this subject.

In *White* v. *Campbell*, 25 Mich. 463, Justice GRAVES discusses the doctrine of acquiescence and says:

"The rule itself is said to have been founded originally on the practice of merchants, and in Lord Hardwick's time it was stated to be a rule among merchants and in equity."

But the doctrine seems to have been applied in that case to others.

In the early case of *Stevens* v. *Tuller*, 4 Mich. 387, it was held necessary, to apply the rule which was invoked in this case, to show some existing antecedent debt or demand between the parties respecting which a balance was struck.

In *Gooding* v. *Hingston*, 20 Mich. 439, it was held that the rule of an account stated and acquiescence therein has never been extended to the case of such compulsory adjustments of demands, as the law may make against the will of the party.

It was held in *Quincey* v. *White*, 63 N. Y., at page 370, that:

"To give to an account delivered the force of an account stated, because of silence on the part of the party receiving it, the circumstances must be such as to justify an inference of assent, upon his part, to its correctness. Where he has disclaimed all liability upon the account, he is not bound to examine the items, upon its delivery to him, and his omission to object will not be taken as an admission of their correctness, and is not *prima facie* proof of the account."

See *Young* v. *Hill*, 67 N. Y. 162 (23 Am. Rep. 99).

An "account stated" means a balance struck between the parties on a settlement; and where a plaintiff is able to show that the mutual dealings which have occurred between the parties have been adjusted, settled, and a balance struck, the law implies a promise to pay that balance. This rule was held not to apply to a case where the contract was in dispute in *Kusterer Brewing Co.* v. *Friar*, 99 Mich. 190 (58 N. W. 52). See, also, *Watkins* v. *Ford*, 69 Mich. 357 (37 N. W. 300) ; *State Bank of St. Johns* v. *McCabe*, 135 Mich. 479 (98 N. W. 20).

The error pointed out was not cured by any other portion of the charge, for the reason that the charge still left it to the jury to consider the evidence of mailing the statement as bearing on the admission of defendant. The record shows that the whole claim of the plaintiff was disputed by the defendant; and we are constrained to hold that the court erred in that portion of its charge above indicated, and that such error was prejudicial. The other questions argued by counsel are not likely to arise upon a new trial.

For the error pointed out the judgment of the circuit court is reversed, and a new trial granted.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.