# STATE OF MICHIGAN
# COURT OF APPEALS

S & S BUILDERS, INC.,

        Plaintiff,

v

KINGS LANE LIMITED DIVIDEND HOUSING
ASSOCIATION LIMITED PARTNERSHIP,

        Defendant/Cross-Plaintiff-Appellee,

and

CAPMARK FINANCE and BERKADIA
COMMERCIAL MORTGAGE, LLC,

        Defendants,

and

PNC BANK,

        Defendant-Appellee,

and

KINGS LANE GP, INC., SJS INVESTMENTS,
INC., and EESAM ARABBO,

        Intervening Defendants/Cross-
        Defendants-Appellants,

and

COLUMBIA HOUSING SLP CORPORATION,

        Intervening Plaintiff/Cross-
        Plaintiff-Appellee.

S & S BUILDERS, INC.,

        Plaintiff-Appellant,

UNPUBLISHED
February 23, 2017

No. 328654
Genesee Circuit Court
LC No. 09-092274-CH

-1-

v

KINGS LANE LIMITED DIVIDEND HOUSING
ASSOCIATION LIMITED PARTNERSHIP,

                    Defendant/Cross-Plaintiff-Appellee,

and

CAPMARK FINANCE and BERKADIA
COMMERCIAL MORTGAGE, LLC,

                    Defendants,

and

PNC BANK,

                    Defendant-Appellee,

and

KINGS LANE GP, INC., SJS INVESTMENTS,
INC., and EESAM ARABBO,

                    Intervening Defendants/Cross-
                    Defendants,

and

COLUMBIA HOUSING SLP CORPORATION,

                    Intervening Plaintiff/Cross-Plaintiff.

No.   328745
Genesee Circuit Court
LC No.   09-092274-CH

---

Before:  GLEICHER, P.J., and MURRAY and FORT HOOD, JJ.

PER CURIAM.

These consolidated appeals arise from a commercial dispute involving the renovation of a housing project in Burton, Michigan.[1]  In Docket No. 328654, cross-defendants, Kings Lane GP, Inc. (Kings Lane GP), SJS Investments, Inc., and Eesam Arabbo, appeal by right the trial court's order severing the claims by cross-plaintiffs, Kings Lane Limited Dividend Housing Association Limited Partnership (Kings Lane Partnership) and Columbia Housing SLP Corporation

---

[1] This Court consolidated the appeals for the efficient administration of the appellate process. See *S&S Builders, Inc v Kings Lane Ltd Dividend Housing Association, LP*, unpublished order of the Court of Appeals, entered August 19, 2015 (Docket Nos. 328654; 328745).

(Columbia Housing), against Kings Lane GP, Arabbo and SJS Investments and consolidating them with the claims advanced by Kings Lane GP, SJS Investments, and Arabbo in a different lower court case. In Docket No. 328745, plaintiff, S&S Builders, Inc., appeals by right the trial court's order entering judgment in favor of Kings Lane Partnership after granting Kings Lane Partnership's motion for summary disposition. For the reasons more fully explained below, we affirm in both dockets.

In Docket No. 328654, Arabbo, Kings Lane GP and SJS Investments argue that the trial court erred in granting the motion by Kings Lane Partnership seeking to sever the partnership's claims from those of S&S Builders and consolidate them in another pending lawsuit brought by Arabbo, Kings Lane GP and SJS Investments in the lower court (the Partnership Case). We disagree.

As an initial matter, Kings Lane Partnership challenges whether this Court has jurisdiction under MCR 7.203(A)(1) to hear the appeal by Arabbo, Kings Lane GP, and SJS Investments. It argues that the trial court's July 20, 2015 order was not a final order with respect to the severed claims because those claims were consolidated with the claims in the Partnership Case and have not yet been resolved. This Court reviews de novo whether it has jurisdiction of an appeal. *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009).

"[T]his Court's jurisdiction is generally ascertained by reference to [the Michigan] Supreme Court's rules." *Id.* at 192. Under MCR 7.203(A)(1), this Court has jurisdiction over appeals of right "by an aggrieved party" from "[a] final judgment or final order" of the circuit court. A final judgment or order is defined, in relevant part, to be the "first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties . . . ." MCR 7.202(6)(a)(i). Having closely examined Kings Lane Partnership's claim regarding this Court's lack of jurisdiction, we acknowledge that it may indeed have merit. Nevertheless, Arabbo, Kings Lane GP, and SJS Investments could have appealed the trial court's decision to sever claims by filing an application for leave to appeal. See MCR 7.203(B)(1). In the interests of finality for the parties, we will exercise our discretion to address their appeal as an application for leave to appeal, grant the application, and proceed to resolve the appeal on the merits. See MCR 7.216(A)(7); *Detroit v Michigan*, 262 Mich App 542, 546; 686 NW2d 514 (2004); *Waatti & Sons Electric Co v Dehko*, 230 Mich App 582, 585; 584 NW2d 372 (1998).

In arguing their motion seeking severance in the trial court, Kings Lane Partnership and Columbia Housing asserted that the trial court had the authority to sever the claims at issue under MCR 2.505(B).[2] However, we note as an initial matter that MCR 2.505(B) does not authorize trial courts to sever claims. The specific language of MCR 2.505(B) allows a trial court to "order a separate trial of one or more claims, cross-claims, counterclaims, third-party claims, or issues[ ]" when it would be convenient, when it would avoid prejudice, or "when separate trials will be conducive to expedition and economy." MCR 2.505(B). Although this Court has not

---

[2] To the extent that we must review the trial court's interpretation and application of the court rules, our review is de novo. *Marketos v American Employers Ins Co*, 465 Mich 407, 412; 633 NW2d 371 (2001).

always carefully observed the distinction, see *LeGendre v Monroe Co*, 234 Mich App 708, 719; 600 NW2d 78 (1999) (stating that MCR 2.505(B) "allows a circuit court to sever trials"), the authority to order separate trials for claims or issues in a single case under MCR 2.505(B) ought to be distinguished from the authority to sever a claim and order that the claim be "proceeded with separately" under MCR 2.207. MCR 2.207 provides, in pertinent part, as follows:

> Misjoinder of parties is not a ground for dismissal of an action. Parties may be added or dropped by order of the court on motion of a party or on the court's own initiative at any stage of the action and on terms that are just. When the presence of persons other than the original parties to the action is required to grant complete relief in the determination of a counterclaim or cross-claim, the court shall order those persons to be brought in as defendants if jurisdiction over them can be obtained. *A claim against a party may be severed and proceeded with separately*. [Emphasis supplied.]

We conclude that the trial court's decision to sever the partnership claims complied with MCR 2.207. The original complaint involved a contractual dispute between a construction company and a land owner, combined with a request to determine the priority of a construction lien. After the limited partners seized control of Kings Lane Partnership, they caused it to sue Arabbo and two of his businesses—Kings Lane GP and SJS Investments—for claims arising out of the June 6, 2006 Amended and Restated Agreement of Limited Partnership of Kings Lane Partnership (the Partnership Agreement). But the claims did not directly involve the construction dispute and could have been brought in a separate lawsuit. While there may be some overlap in the evidence and witnesses, the proofs necessary to resolve the construction dispute were less complicated than those involved in the partnership dispute. Because the claims to be severed involved third parties, there was also less risk that the decision to sever the claims might prejudice the nonmoving parties' rights. And, by the time of the motion to sever, the claims of S&S Builders had all been resolved by way of summary disposition. As such, the parties would not benefit by retaining the severed claims as part of the original construction dispute. By contrast, there was a clear potential for harm should the trial court refuse to sever the requested claims arising from the Partnership Agreement from the original construction claims. Arabbo, Kings Lane GP, and SJS Investment had filed a new lawsuit with claims arising from the partnership dispute which implicated the claims by Kings Lane Partnership and Columbia Housing. The new claims also involved substantially the same evidence and witnesses as the third-party claims. Thus, joining the claims arising from the dispute over the proper handling of the partnership into a single case or into consolidated cases presented an opportunity for significant efficiency for the parties.

On appeal, Arabbo, Kings Lane GP, and SJS Investments argue that severing the claims against them prejudiced them because the "claims and defenses of S&S Builders and the Intervening Defendant/Appellants are so similar and interdependent" that the resolution of one dispute will subject them to the preclusive effects of res judicata or collateral estoppel. In making this argument Arabbo, Kings Lane GP, and SJS Investments do not address the important fact that S&S Builders is a separate entity and that it was not involved in the partnership dispute. In order for the doctrines of res judicata or collateral estoppel to apply, a prior action must have involved the same parties or their privies. *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004); *Monat v State Farm Ins Co*, 469 Mich 679, 682-685; 677

NW2d 843 (2004). Although S&S Builders sued Kings Lane Partnership, which filed a third-party complaint against Kings Lane GP, SJS Investments, Inc. and Arabbo, S&S Builders's claims did not arise from the 2006 Partnership Agreement and did not involve any claims against or counterclaims by Arabbo, Kings Lane GP, SJS Investments, Columbia Housing, PNC Capital, or PNC Bank. Accordingly, we are not persuaded that the resolution of the construction dispute between S&S Builders and Kings Lane Partnership could have a preclusive effect on the claims by or against Arabbo, Kings Lane GP, or SJS Investments in a different action. We are satisfied the trial court's decision to sever the claims into a separate suit complied with MCR 2.207.[3]

In Docket No. 328745, S&S Builders argues that the trial court erred when it granted the motion for summary disposition by Kings Lane Partnership and dismissed its contract claim and its claims for unjust enrichment and account stated. We disagree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). The trial court must examine all the substantively admissible evidence proffered by the parties, in the light most favorable to the nonmoving party, to determine whether the evidence establishes genuine issues of material fact. *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d 817 (1999). The trial court should then only grant a motion under MCR 2.116(C)(10) when the evidence properly before the trial court shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 120. This Court also reviews de novo whether the trial court properly interpreted the contracts at issue. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

We turn first to the claim of S&S Builders alleging breach of contract. In *Miller-Davis Co v Ahrens Constr, Ins*, 495 Mich 161, 178; 848 NW2d 95 (2014), the Michigan Supreme Court set forth the threshold elements that a party must demonstrate to successfully recover under a breach of contract claim:

> A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach. [Footnote omitted.]

Kings Lane Partnership moved for summary disposition of the contract claim on the ground that the claim failed as a matter of law when the doctrine of equitable estoppel is applied to the otherwise undisputed facts. Specifically, it asserted and presented evidence that the 2006 Partnership Agreement required Arabbo, when acting as the president of the general partner (Kings Lane GP), to obtain prior written approval before he could enter into any agreement to amend the initial construction agreements with S&S Builders. It then argued and presented

---

[3] As noted, Kings Lane Partnership and Columbia Housing brought their motion to sever pursuant to the authority of MCR 2.505. The trial court did not expressly cite this court rule in its reasoning granting the motion. In any event, this Court will affirm a trial court's decision even if the trial court's decision was grounded in different reasoning. *Arabo v Michigan Gaming Control Bd*, 310 Mich App 370, 389; 872 NW2d 223 (2015).

evidence that it was undisputed that Arabbo caused Kings Lane Partnership to amend the agreements without obtaining the required written approval, that at the time he made these amendments he also was the president and principal shareholder of S&S Builders, and that he acted on behalf of both S&S Builders and Kings Lane Partnership. When viewing the arguments as a whole, it is evident that Kings Lane Partnership argued below that estoppel applied to bar S&S Builders from asserting that it did not need or did not know that the approval of the limited partners was required before Arabbo could validly bind the partnership to the amendments. Put another way, although framed as an estoppel argument, Kings Lane Partnership plainly asserted that summary disposition was appropriate on the basis of Arabbo's dual role in the transaction and the knowledge that he had as both the president of S&S Builders and Kings Lane GP. In arguing that S&S Builders should be estopped from asserting that it did not know that it needed approval for the amendments, Kings Lane Partnership plainly showed that S&S Builders knew that Arabbo did not have the actual or apparent authority to bind Kings Lane Partnership.

As the party seeking summary disposition, Kings Lane Partnership could establish that it was entitled to summary disposition of S&S Builders's contract claim by demonstrating that S&S Builders could not establish an essential element of its claim. *Lowrey v LMPS & LMPJ, Inc*, ___ Mich ___, ___; ___ NW2d ___ (2016) (Docket No. 153025); slip op at 5; *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). In order to show that Kings Lane Partnership was liable for the amendments to the construction agreements, S&S Builders had to establish that Arabbo—when he acted on the partnership's behalf in his capacity as the president of Kings Lane GP—had either the actual or apparent authority to amend the agreements, and to therefore execute the contracts. See *James v Alberts*, 464 Mich 12, 15; 626 NW2d 158 (2001) (citations omitted). ("Under fundamental agency law, a principal is bound by an agent's actions within the agent's actual or apparent authority.")

Kings Lane Partnership presented evidence that (1) Arabbo was both the president of Kings Lane GP, which was the general partner of Kings Lane Partnership, and (2) the president of S&S Builders, when S&S Builders executed the amendments to the initial construction agreements with Kings Lane Partnership. Kings Lane Partnership also relied on the 2006 Partnership Agreement in its motion for summary disposition for the proposition that Arabbo was not authorized to execute amendments to the construction agreements. Under § 6.5(i) of the 2006 Partnership Agreement, Arabbo, as the general partner's president, had to "provide the Limited Partners with a copy of any proposed amendment to any Project Document at least (10) days prior to execution of such amendment for purposes of seeking the Consent thereof."[4] The term "Consent" was defined in the agreement to "mean prior written approval." Additionally, pursuant to § 6.3(j) of the 2006 Partnership Agreement, Arabbo did not have authority to amend "any Project Document" to the extent that the amendment might "have a material adverse effect on the Project, the Partnership or the Limited Partners" without first getting the "Consent of the

---

[4] Article II of the 2006 Partnership Agreement defined "Project Documents" to include, among other things, the "Construction Contract," which was defined as the agreement "by and between the Partnership and the Builder which provides for a guaranteed fixed price of $10,927,962."

Investment Limited Partner and the Special Limited Partner." Thus, under the undisputed terms of the 2006 Partnership Agreement, Arabbo—when acting in his role as the president of Kings Lane GP, the general partner for Kings Lane Partnership—did not have authority to enter into an agreement amending the construction agreements without first obtaining prior written approval for the amendment from the limited partners.

Arabbo executed the 2006 Partnership Agreement as an individual and as the president of Kings Lane GP. For that reason, it is reasonable to conclude that he had knowledge of the limitations on his authority to bind Kings Lane Partnership, and his knowledge became the knowledge of S&S Builders in his role as the president of that entity. See *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 213-214; 476 NW2d 392 (1991) (discussing knowledge imputed to a corporation from an individual). Therefore, S&S Builders knew that Arabbo could not bind Kings Lane Partnership to the amendments without prior written approval from the limited partners.[5] Viewing the record evidence in the light most favorable to S&S Builders, Kings Lane Partnership established that S&S Builders knew that Arabbo did not have the authority to amend the construction agreements without the written approval of the limited partners. Accordingly, where Kings Lane Partnership established that the contracts at issue were invalid, the trial court's grant of summary disposition of S&S Builders' breach of contract claim under MCR 2.116(C)(10) was correct. *Maiden*, 461 Mich at 120.[6]

S&S Builders next argues that the trial court erred when it dismissed S&S Builders' claim for unjust enrichment on the ground that the construction project was governed by an explicit agreement. We disagree.

Although whether a person has been unjustly enriched can be a question of disputed fact, whether a claim for unjust enrichment is legally sufficient is a question of law that this Court reviews de novo. *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006). "[U]nder the equitable doctrine of unjust enrichment, [a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Michigan Ed Employees Mut Ins Co v Morris*, 460 Mich 180, 198; 596 NW2d 142 (1999) (quotation marks and citations omitted). In *Karaus v Bank of New York Mellon*, 300 Mich App

---

[5] When a party to a contract knows that the agent of a principal must get approval for an agreement before he or she can bind the principal and knows that the agent has not obtained the required approval, that party cannot rely on an agent's apparent authority to hold the principal liable under the agreement. See *Lawton v Contract Purchase Corp*, 298 Mich 712, 718; 299 NW 777 (1941).

[6] Although the trial court's basis for its reasoning differed somewhat from our legal analysis, this Court will not reverse a trial court when it came to the correct result, even if for different reasons. *Arabo*, 310 Mich App at 389.

9, 22; 831 NW2d 897 (2012), this Court set forth the requirements for a party to establish a claim of unjust enrichment:

A claim of unjust enrichment requires the complaining party to establish (1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party. Not all enrichment is unjust in nature, and the key to determining whether enrichment is unjust is determining whether a party unjustly received and retained an independent benefit. [Citations omitted.]

It is well settled that a "contract [on the basis of unjust enrichment] will be implied only if there is no express contract covering the same subject matter." *Belle Isle Grill Corp v City of Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003).

The record confirmed that the initial construction agreements required S&S Builders to perform the renovation of the housing project according to detailed drawings and specifications for a fixed sum of $10,927,962. Both agreements also clearly covered the possibility that the work might be changed by the agreement of the parties. Accordingly, we acknowledge that there was an express contract covering the rights and obligations of the parties with regard to the construction project at issue, which included the rights and obligations arising from changes to the drawings and specifications for the work. Despite the existence of the express agreements covering the work, S&S Builders argues that it should be entitled to recover the reasonable value of its materials and services as extras performed outside of the parties' agreement. S&S Builders relies on the decision in *Cascade Electric Co v Rice*, 70 Mich App 420; 245 NW2d 774 (1976). In *Cascade*, this Court held that the existence of an express contract will not bar a claim of unjust enrichment seeking compensation for extras not contemplated under a construction contract. *Id.* at 426, citing *Jarosz v Caesar Realty, Inc*, 53 Mich App 402, 405; 220 NW2d 191 (1974). In *Jarosz*, this Court held that a contract could be implied to cover the costs of extras on a project even though the contract giving rise to the work required all changes to be in writing because there was evidence that the owner waived the writing requirement and ordered the work, or because the original contract language did not apply to extras. *Id.* Here, the underlying contracts covered all the work to be performed in the renovation project and provided a fixed price. The agreements also contemplated changes to the work orders. Thus, unlike the facts of *Cascade* and *Jarosz*, this case involves an express agreement that encompassed the changes. Moreover, as already explained, S&S Builders knew that Arabbo did not have the authority to permit changes to the work order or commit Kings Lane Partnership to the claimed extras. Under the facts of this case, the trial court did not err when it determined that the changes to the work were covered by the terms of an express agreement and, therefore, that S&S Builders could not recover under a theory of unjust enrichment as a matter of law. *Belle Isle Grill Corp*, 256 Mich App at 478.

Finally, S&S Builders argues that the trial court erred when it dismissed its claim of account stated. We disagree.

As the Michigan Supreme Court has explained, an action on an account stated is a contract claim arising from the "assent to an agreed balance, and it is an evidentiary admission by the parties of the facts asserted in the computation and of the promise by the debtor to pay the amount due." *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543, 557; 837 NW2d

244 (2013) (footnote, quotation marks and citation omitted). "An account stated, like all contracts, requires mutual assent. Specifically, '[a]n account stated requires the manifestation of assent by both parties to the correctness of the statement of the account between them.'" *Id.* (footnote omitted), quoting 13 Corbin, Contracts (rev ed), § 72.4(2), p 481.

In order to prove a claim for account stated, S&S Builders had to be able to prove that there was a valid underlying debt, which was the subject of the account stated. More than a hundred years ago, in *Thomasma v Carpenter*, 175 Mich 428; 141 NW 559 (1913), our Supreme Court explained that a party cannot use an action for account stated to create a liability where none existed. In that case, Harry Thomasma claimed that Richard Carpenter had promised to pay him $1,000 to help him find subscribers for his stock. *Id.* at 430. Thomasma sent statements for services rendered to Carpenter and Carpenter did not object; however, he later told Thomasma verbally that he would not pay him. *Id.* at 431.

On appeal, our Supreme Court examined whether the trial court properly instructed the jury that it could consider that Carpenter had admitted the account stated if he failed to timely respond to Thomasma's statements for services rendered. *Id.* at 432, 434. It concluded that the trial court erred because it essentially allowed the jury to find that there was a valid underlying contract on the basis of Carpenter's failure to timely deny the statements:

> The rule laid down by the trial court does not apply to a claim that an express contract exists. Such claim is in no sense an "account," within the meaning of the rule as applied to an account stated, or an account rendered. The very fact of the account between the parties implies a dealing, which, as matter of fact, was denied by [Carpenter] in this case. The giving of this portion of the charge may be said to be begging the whole question whether there was any contract relation existing between the parties. The rule invoked by the court was not applicable to the case. [*Id.* at 434-435.]

The Court in *Thomasma* did not hold that an account stated can never apply if the underlying debt was the subject of an express contract. Rather, it noted that a plaintiff cannot use the process for establishing a claim for account stated to circumvent the need to prove the validity of the underlying debt. Thus, in that case, Thomasma's claim succeeded or failed on the basis of his ability to prove the agreement for services alone. Stated another away, his claim depended on establishing the validity of an express agreement. *Id.* at 434-435, 437.

S&S Builders maintained that it established an account stated on the basis of the invoices that it purportedly sent to Kings Lane Partnership. However, Kings Lane Partnership's failure to object to the adjustments stated on the invoices does not establish that Kings Lane Partnership had in fact contracted with S&S Builders for the disputed work. S&S Builders could not use the procedures for establishing an account stated to circumvent its obligation to prove the validity of the underlying debt. *Id.* S&S Builders's claim that it should be compensated for extra work that it performed on a fixed price contract necessarily depended on the validity of the underlying amendments to the fixed price agreement. And, as already concluded earlier in this opinion, the amendments to the underlying construction contract were invalid where Arabbo did not have the authority to execute the agreements. Consequently, the trial court correctly dismissed S&S

Builders's claim for account stated, albeit on a somewhat different basis of legal reasoning. *Arabo*, 310 Mich App at 389.

In Docket No. 328654, we exercise our discretion to treat the appeal as an application for leave to appeal, grant the appeal, and conclude that the trial court correctly granted the motion to sever. In Docket No. 328745, we hold that the trial court correctly dismissed S&S Builders's contract claim and claims of unjust enrichment and account stated. Consequently, we conclude that the trial court properly entered judgment in favor of Kings Lane Partnership on these claims in Docket No. 328745.

Affirmed in both Docket No. 328654 and Docket No. 328745. In Docket No. 328654, Kings Lane Partnership, Columbia Housing and PNC Bank, as prevailing parties, may tax costs pursuant to MCR 7.219. In Docket No. 328745, Kings Lane Partnership and PNC Bank, as prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Elizabeth L. Gleicher
/s/ Christopher M. Murray
/s/ Karen M. Fort Hood